MOTORISTS MUTUAL INSURANCE COMPANIES, Appellee,

v.

GRISCHKAN et al., Appellants.

[Cite as *Motorists Mut. Ins. Cos. v. Grischkan* (1993), 86 Ohio App.3d 148.]

Court of Appeals of Ohio,
Cuyahoga County.

No. 61831.

Decided Feb. 1, 1993.

*Gallagher, Sharp, Fulton & Norman, Thomas E. Dover* and *Gary L. Nicholson,* for appellee.

*Jerome L. Bentoff Co., L.P.A.,* and *Larry S. Klein,* for appellants.

---

HARPER, Judge.

Defendants-appellants, Dr. Daniel M. Grischkan and his wife, Debby Grischkan ("the Grischkans"), appeal an order of the Court of Common Pleas of Cuyahoga County granting summary judgment in a declaratory judgment action in favor of plaintiff-appellee, Motorists Mutual Insurance Companies ("Motorists"). A review of the record compels affirmance.

Dr. Grischkan was involved in an automobile collision with a Macko Tile Co. van driven by Richard Macko on December 17, 1986. At the time of the accident, the Grischkans were insured by Motorists with an underinsured motorist provision with a limit of $500,000. Macko was insured by Nationwide Insurance Co. ("Nationwide") for liability coverage of $100,000.

The Grischkans filed a negligence action against Richard Macko and Macko Tile Co. on September 22, 1988. A settlement was reached with Nationwide in May 1990 for seventy-five thousand dollars.

Prior to the settlement but after the filing of the complaint, counsel for the Grischkans sent a letter to Motorists on May 1, 1990, stating:

" * * * Pursuant to the *Bogen* case [sic, *Bogan v. Progressive Cas. Ins. Co.* (1988), 36 Ohio St.3d 22, 521 N.E.2d 447], we would request that Motorists Mutual consent to a settlement in which the limits are not fully met by Nationwide or in the alternative tender their [sic] own check for the agreed settlement in order to protect its subrogation rights under the policy."

Motorists responded on May 17, 1990 as follows:

"This letter is to clarify our position regarding the Underinsured Motorists claim of David Grischkan, your client, and our insured. After further review, we still contend that this claim is worth less than the $100,000 policy limits available from Nationwide Insurance, the tortfeasor's carrier."

Nevertheless, the Grischkans accepted Nationwide's offer and notified Motorists of the acceptance in a letter dated June 1, 1990:

" * * * It is my understanding that in order for Motorist [sic] Mutual to allow us to access their [sic] policy they [sic] requested the difference of the wrongdoer's limits $100,000.00 minus the $75,000.00 offer, which equals $25,000.00, to be tendered immediately by Nationwide. Nationwide obviously did not agree.

"It is our position that Motorist [sic] Mutual's actions are inconsistent with the Ohio Supreme Court dictates as to public policy considerations set forth in Ohio Revised Code 3937.18.

"Therefore we acceptal [sic] the $75,000.00 offer and signed a release and will proceed to file a declaratory judgment action with regard to our rights on the underinsured motorist claim."

On June 7, 1990, Motorists filed a complaint for declaratory judgment against the Grischkans, seeking the declaration that the Grischkans were not entitled to underinsured coverage. The Grischkans filed a motion for summary judgment on August 17, 1990. Motorists responded with a cross-motion for summary judgment on October 26, 1990, setting forth a two-part argument. First, it claimed that the Grischkans failed to exhaust the limits of Nationwide's $100,000 policy with Macko. Second, Motorists submitted that the Grischkans destroyed its subrogation rights against Nationwide as a result of the settlement, which was not consented to by Motorists.

The trial court granted Motorists' motion on April 30, 1991. In its journal entry, the trial court stated:

"Plaintiff's Cross Motion for Summary Judgment granted and Defendants' Motion for Summary Judgment denied. Judgment for Plaintiff at its sole cost."

This appeal timely followed with appellants raising the following assignment of error for our review:

"The Trial Court erred in granting Summary Judgment to the Plaintiff/Appellee by determining that the Defendant/Appellant [sic] did not exhaust the tortfeasor's insurance policy and that the Plaintiff/Appellee did not wrongfully withhold consent to settlement proceedings with the Defendant/Appellant [sic] where there exists [sic] genuine issues of material fact pertinent to each of these issues."

Initially, it is noted that the trial court should have expressly declared the rights of the parties when it disposed of the issues by journalizing the above quoted entry. See *Waldeck v. N. College Hill* (1985), 24 Ohio App.3d 189, 24 OBR 280, 493 N.E.2d 1375; *Metro–Petroleum, Inc. v. Warrensville Hts.* (Sept. 24, 1992), Cuyahoga App. No. 61164, unreported, 1992 WL 238887; *Seawright v. Liberty Mut. Ins. Co.* (Oct. 1, 1987), Cuyahoga App. No. 52670, unreported, 1987 WL 17893. An action which seeks the declaration of rights and obligations is not the type of action ideally suited to disposition by summary judgment. Therefore,

" ' * * * [A]s a general rule, a court fails to fulfill its function in a declaratory judgment action when it disposes of the issues by journalizing an entry merely sustaining or overruling a motion for summary judgment without setting forth

any construction of the document or law under consideration. * * * ' " *Waldeck,* *supra,* 24 Ohio App.3d at 190, 24 OBR at 281, 493 N.E.2d at 1377, quoting *Kramer v. W. Am. Ins. Co.* (Oct. 6, 1982), Hamilton App. Nos. C–810829 and 810891, 1982 WL 4743, unreported.

The granting of summary judgment is appropriate only if there is no genuine issue as to any material fact, and reasonable minds can come to but one conclusion, which is adverse to the nonmoving party. *Toledo's Great E. Shoppers City, Inc. v. Abde's Black Angus Steak House No. III, Inc.* (1986), 24 Ohio St.3d 198, 201, 24 OBR 426, 428–429, 494 N.E.2d 1101, 1103–1104; Civ.R. 56(C). An order granting summary judgment will, therefore, be upheld only where the record discloses no genuine issue of material fact and the moving party is entitled to judgment as a matter of law when the evidence is construed most strongly in favor of the nonmoving party. *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 327, 4 O.O.3d 466, 472, 364 N.E.2d 267, 274. In reviewing the granting of summary judgment, an appellate court must apply the same standard as the trial court. *Id.*

The Grischkans contend that they exhausted the limit of Macko's policy with Nationwide pursuant to *Bogan v. Progressive Cas. Ins. Co.* (1988), 36 Ohio St.3d 22, 521 N.E.2d 447. They furthermore assert that Motorists wrongfully withheld consent to the $75,000 settlement. The Grischkans, therefore, argue that the trial court erred in concluding they are not entitled to receive underinsured coverage with Motorists, as there remain genuine issues of material fact concerning these two issues.

Motorists initially avers that it was not required to give its consent to any settlement which did not exhaust Macko's policy limits. This position is grounded, according to Motorists, in a portion of its provision for underinsured coverage which states, in pertinent part, that:

"We will pay under this coverage only after the limits of liability under any applicable bodily injury liability bonds or policies have been exhausted by payment of judgments or settlements."

An exhaustion clause is a valid precondition to the receipt of underinsured motorist coverage. *Bogan, supra,* 36 Ohio St.3d at 28, 521 N.E.2d at 453; *Queen City Indemn. Co. v. Wasdovich* (May 31, 1990), Cuyahoga App. No. 56888, unreported, 1990 WL 71536. The clause is fulfilled when the injured insured "receives from the underinsured tortfeasor's insurance carrier a commitment to pay an amount in settlement with the injured party retaining the right to proceed against his underinsured motorist insurance carrier only for those amounts in excess of the tortfeasor's policy limits." *Bogan,* paragraph two of the syllabus.

See, also, *McDonald v. Republic–Franklin Ins. Co.* (1989), 45 Ohio St.3d 27, 30, 543 N.E.2d 456, 459.

In *Bogan,* the Supreme Court of Ohio determined that the injured insured exhausted the limits of the tortfeasor's insurance policy because the proffered settlement was treated as a "receipt of the entire policy for all practical purposes." *Bogan,* 36 Ohio St.3d at 28, 521 N.E.2d at 453. The injured insured accepted a $21,000 settlement from the tortfeasor who had coverage for $25,000. Even though the court determined that the Bogans did exhaust the tortfeasor's policy limits, the court cautioned that "[w]e do not mean to suggest by the foregoing that an injured party may, voluntarily or otherwise, abandon his claim against the tortfeasor or his insurer and so proceed directly against the underinsured motorist insurer." *Id.*

We, therefore, reached a different conclusion in *Queen City,* where we were presented with a settlement of $20,000, than the court in *Bogan.* The tortfeasor in *Queen City* had liability coverage of $50,000. Recognizing the Supreme Court's caution in *Bogan* and the public policy consideration acknowledged therein that settlements for less than the policy limits may represent "savings in litigation costs for both sides," *id.* at 26, 521 N.E.2d at 451, we refused to find that a settlement for $30,000 less than the tortfeasor's liability limit represented either a saving in litigation expenses or a receipt of the entire policy for practical purposes. We thus concluded that the injured insured's settlement for substantially less than the tortfeasor's liability limit amounted to an abandonment of any claim, as "the tortfeasor's policy limits were not exhausted even for practical purposes by settling for twenty thousand dollars when fifty thousand dollars was available." *Queen City* at 6.

In the present case, the Grischkans accepted a settlement offer of $75,000 when the tortfeasor's policy limit was $100,000. They provided an affidavit from their attorney to the trial court in which it was stated that litigation costs were expected to exceed $10,000. We find that our decision in *Queen City* is directly applicable, and view the $75,000 settlement, $25,000 less than was available, as neither a saving in litigation costs nor a receipt of the entire policy for practical purposes. As a result, the Grischkans are not entitled to underinsured motorist coverage due to their failure to exhaust the limits of Nationwide's insurance policy with Macko.

Regarding rights of subrogation,[1] a clause which protects those rights in an underinsured motorist provision is valid and enforceable. *Bogan,* para-

---

1. Although our finding that the Grischkans failed to exhaust the limits of Nationwide's policy moots the subrogation issue, we will nevertheless address this issue since the parties view the relevant cases as supporting their respective arguments.

graph four of the syllabus. The insured, however, does not bear the burden of protecting those rights. *McDonald, supra,* 45 Ohio St.3d at 31–32, 543 N.E.2d at 460–461 (overruling paragraph five of the syllabus in *Bogan* ). An insurer is, therefore, obligated to assist the insured in the preservation of its subrogation rights. *Id.* The Supreme Court of Ohio thus held that:

" * * * when an insured has given his underinsurance carrier notice of a tentative settlement prior to release, and the insurer has had a reasonable opportunity to protect its subrogation rights by paying the underinsured motorist benefits before the release but does not do so, the release will not preclude recovery of underinsurance benefits. See *Schmidt v. Clothier* (Minn.1983), 338 N.W.2d 256. The insurer's failure to respond, within a reasonable time, to notification by its insured of a settlement offer will operate to void a subrogation clause in the insurer's underinsured motorist provision." *Id.* at 31, 543 N.E.2d at 460.

In *McDonald,* the injured insured's provider, Republic–Franklin Insurance Company ("RFI"), received notice of settlement from the tortfeasor's insurer, United Service Automobile Association ("USAA") on May 23, 1985. The settlement was ultimately accepted on December 20, 1985. RFI never mentioned the settlement offer in any of its communications with USAA in that time period. However, RFI reacted to the acceptance of the offer by claiming that McDonald's execution of a release prejudiced its subrogation rights.

The court found that the issue of whether McDonald was entitled to underinsured coverage depended on the reasonableness of RFI's response to USAA's settlement offer. *Id.* at 32, 543 N.E.2d at 461. The case was then remanded to the trial court to determine this issue, since it involved a factual inquiry. *Id.*

At first glance it appears that the *McDonald* decision furnishes an injured insured's provider with only one option when given notice of a proffered settlement figure by a tortfeasor's insurer prior to acceptance of the offer and release. The injured party's insurer protects its subrogation rights "by paying the underinsured motorists benefits before the release." The Grischkans appear to argue this view, *i.e.,* since Motorists did not pay the underinsured benefits prior to the acceptance of the settlement and the release, Motorists is prevented from arguing that the Grischkans destroyed its subrogation rights.

■ Although the *McDonald* court overruled the fifth paragraph of the *Bogan* syllabus, we are careful to point out that the *Bogan* decision was not overruled. The overruling of the paragraph was compelled by the breadth of it and not the incorrectness of the decision itself. Moreover, the *McDonald* court did find that the McDonald's insurer could not claim that the acceptance of a settlement and the signing of the release prejudiced its subrogation rights even

when the insurer failed to pay the underinsured motorist benefits prior to release. The relevant inquiry is whether the insurer reasonably responded to a settlement offer. The *Bogan* decision thus remains good law in Ohio.

In *Bogan*, the injured insured's provider, Progressive Casualty Insurance Company ("Progressive"), received notice from its insureds on June 20, 1984, that they were seeking underinsured motorist coverage. On June 29, 1984, Progressive learned that the tortfeasor's insurer, Nationwide Mutual Insurance Company ("Mutual Insurance") had offered a settlement in exchange for a complete release. Mutual Insurance requested that Progressive either consent to the settlement or tender a check in the amount of the settlement figure in order to protect its subrogation rights. Progressive responded that the settlement figure was "reasonable and adequate" and that the injured insured's claim did not exceed Mutual Insurance's limits of liability. The court determined that:

"[B]y executing a release which precluded the insurer from exercising its subrogation rights, the Bogans materially breached the insurance contract. Progressive is therefore discharged from its obligation to provide underinsured motorist coverage." *Bogan*, 36 Ohio St.3d at 31, 521 N.E.2d at 456.

We find *Bogan* and not *McDonald* to be controlling in this case as the facts here closely resemble those in *Bogan*. In the instant case, Motorists did not base its refusal to consent to the settlement solely on the Grischkans' failure to exhaust Macko's policy limits. It based its refusal on the belief that Dr. Grischkan's injury was not worth in excess of the policy limits. Motorists informed the Grischkans' attorney of this position in a letter dated May 17, 1990, after receiving notification that the Grischkans were negotiating a settlement with Nationwide earlier that month. Motorists responded quickly to the settlement offer with its statement that the Grischkans' claim was not worth more than Nationwide's policy with Macko, unlike in *McDonald* where the injured party's insurer ignored the settlement offer until acceptance and release and then claimed its subrogation rights were destroyed thereby.

The Grischkans offered no evidence whatsoever concerning the injuries sustained by Dr. Grischkan as a result of the collision with Macko. Otherwise, the reasonableness of Motorists' position that Dr. Grischkan's injuries did not exceed $100,000 would be a factual question which would require the denial of the parties' motions for summary judgment.

In conclusion, not only is Motorists discharged from its obligation to provide underinsured motorist coverage to the Grischkans because they failed to exhaust the limits of Nationwide's policy with Macko, Motorists would be likewise discharged because the Grischkans failed to "meet the crucial precondition of protecting [Motorists'] subrogation rights." *Bogan* at 31, 521 N.E.2d at 456. The Grischkans materially breached the insurance contract with Motorists when

they executed a release which denied Motorists the exercise of its subrogation rights.

Accordingly, appellants' assignment of error is overruled.

*Judgment affirmed.*

PATTON, P.J., and MATIA, J., concur.