NICKSCHINSKI, Appellant,

v.

SENTRY INSURANCE COMPANY, Appellee.

[Cite as *Nickschinski v. Sentry Ins. Co.* (1993), 88 Ohio App.3d 185.]

Court of Appeals of Ohio,
Cuyahoga County.

No. 62396.

Decided June 7, 1993.

186

*Carl G. McMahon,* for appellant.

*Michael A. Thomas,* for appellee.

HARPER, Judge.

Plaintiff-appellant, Marcy Nickschinski, appeals from an order of the Court of Common Pleas of Cuyahoga County granting summary judgment in a declaratory judgment action in favor of defendant-appellee, Sentry Insurance Company ("Sentry"). A review of the record compels affirmance.

Appellant was injured in an automobile collision on November 9, 1985 while a passenger in a motor vehicle operated by an uninsured driver. At the time of the accident, appellant's brother, Terry, was insured by Sentry for uninsured coverage in the aggregate sum of $50,000 plus medical pay coverage in the amount of $2,000 per person. Appellant's mother was insured through another carrier with an uninsured motorist provision of $50,000 per person.

Appellant, within days of the accident, presented an uninsured motorist claim through her attorney to her mother's insurer. Appellant received the maximum benefits provided by that coverage, $50,000.

On August 8, 1990, appellant filed a complaint for declaratory judgment against Sentry, seeking the declaration that she was entitled to uninsured coverage under her brother's policy. Appellant thereafter filed a motion for summary judgment on April 11, 1991. Sentry likewise filed a motion for summary judgment on that date, setting forth a three-part argument. Although it acknowledged that appellant was indeed covered under her brother's policy, Sentry first claimed that she was not entitled to receive the benefits because she destroyed its subrogation rights. Second, Sentry contended an anti-stacking provision precluded appellant from accessing the uninsured provisions. Third, referring once again to its subrogation rights, Sentry maintained that appellant had failed to timely notify it of the uninsured claim. The trial court granted Sentry's motion on August 6, 1991 without opinion.

This appeal timely followed with appellant claiming as error:

"I. The trial court erred in granting summary judgment in favor of appellee since a claimant has a fifteen year contractual statute of limitations within which to make uninsured motorist and medical payment claims absent any stated claims deadlines in the auto insurance policy..

"II. The trial court erred in granting summary judgment in favor of appellee since appellee's alleged subrogation agreement was vague, ambiguous, inconspicuous and meaningless.

"III. The trial court erred in granting summary judgment in favor of appellee since appellee's alleged set-off and anti-stacking provisions were vague, convoluted, inconspicuous and ambiguous."

■ Initially, it is noted that the trial court should have expressly declared the rights of the parties when it disposed of the issues. See *Waldeck v. N. College Hill* (1985), 24 Ohio App.3d 189, 24 OBR 280, 493 N.E.2d 1375; *Motorists Mut. Ins. Cos. v. Grischkan* (1993), 86 Ohio App.3d 148, 620 N.E.2d 190; *Metro-Petroleum, Inc. v. Warrensville Hts.* (Sept. 24, 1992), Cuyahoga App. No. 61164, unreported, 1992 WL 238887; *Seawright v. Liberty Mut. Ins. Co.* (Oct. 1, 1987), Cuyahoga App. No. 52670, unreported, 1987 WL 17893. An action which seeks the declaration of rights and obligations is not the type of action ideally suited to disposition by summary judgment. Therefore, " ' * * * [a]s a general rule, a court fails to fulfill its function in a declaratory judgment action when it disposes of the issues by journalizing an entry merely sustaining or overruling a motion for summary judgment without setting forth any construction of the document or law under consideration. * * *' " *Waldeck, supra,* 24 Ohio App.3d at 190, 24 OBR at 281, 493 N.E.2d at 1377, quoting *Kramer v. W. Am. Ins. Co.* (Oct. 6, 1982), Hamilton App. Nos. C–810829 and 810891, unreported, 1982 WL 4743.

■ The granting of summary judgment is only appropriate if there is no genuine issue as to any material fact, and reasonable minds can come to but one conclusion which is adverse to the nonmoving party. *Toledo's Great E. Shoppers City, Inc. v. Abde's Black Angus Steak House No. III, Inc.* (1986), 24 Ohio St.3d 198, 201, 24 OBR 426, 428, 494 N.E.2d 1101, 1103; Civ.R. 56(C). An order granting summary judgment will, therefore, only be upheld where the record discloses no genuine issues of material fact and the moving party is entitled to judgment as a matter of law when construing the evidence most strongly in favor of the nonmoving party. *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 327, 4 O.O.3d 466, 471, 364 N.E.2d 267, 273. In reviewing the granting of summary judgment, an appellate court must apply the same standard as the trial court. *Id.*

■ Appellant proposes in her second assignment of error that Sentry's policy did not provide for its subrogation rights with clear, concise and unambiguous language. She, therefore, argues that notice of an injured insured's claim did not matter because Sentry did not protect its subrogation rights and even if it did, she submits that Sentry would not have been able to recover against the uninsured driver because he was a minor and penniless.

■ A clause which protects the subrogation rights of a provider of uninsured motorist coverage is valid and enforceable. R.C. 3937.18(E); *Bogan v. Progressive Cas. Ins. Co.* (1988), 36 Ohio St.3d 22, 29, 521 N.E.2d 447, 454. An insured, however, is no longer obligated to bear the burden of protecting an insurer's subrogation rights. *McDonald v. Republic–Franklin Ins. Co.* (1989), 45 Ohio St.3d 27, 31, 543 N.E.2d 456, 460 (overruling paragraph five of the syllabus in

*Bogan* ). An insurer is, therefore, required to assist the insured in the preservation of these rights. *McDonald.*

Appellant's claim, in her response brief, that the decision of *McDonald* "tossed out an insurer's subrogation rights, thereby invalidating the *Bogan* decision, and held that the preservation of subrogation rights is no longer an enforceable precondition to obtaining underinsured motorist benefits" is a grossly inaccurate statement of law. As we stated in *Grischkan:*

"Although the *McDonald* court overruled the fifth paragraph of the *Bogan* syllabus, we are careful to point out that the *Bogan* decision was not overruled. The overruling of the paragraph was compelled by the breadth of it and not the incorrectness of the decision itself. Moreover, the *McDonald* court did find that the McDonald's insurer could not claim that the acceptance of a settlement and the signing of the release prejudiced its subrogation rights even when the insurer failed to pay the underinsured motorist benefits prior to release. The relevant inquiry is whether the insurer reasonably responded to a settlement offer. The *Bogan* decision thus remains good law in Ohio." *Id.,* 86 Ohio App.3d at 154–155, 620 N.E.2d at 195.

 We also find fault with appellant's assertion that Sentry's subrogation rights were worthless because it would not have been able to recover against the uninsured driver even if it invoked its subrogation rights since the driver was a minor and penniless. In *Bogan,* the court found such an allegation to be incorrect as a matter of law as well as the factual assumptions underlying the analysis. *Bogan,* 36 Ohio St.3d at 30, 521 N.E.2d at 455. The court explained:

"[A] right of subrogation * * * is a full and present right in and of itself wholly independent of whether a later judgment obtained by use of such right will be reduced to collection from the tortfeasor. * * * It is, therefore, both just and reasonable that an insurer require, as a precondition to coverage, not that such subrogation rights *will* result in reimbursement to the insurer, but that the injured party not compromise with the tortfeasor in such a way as to destroy the insurer's subrogation right. Such compromise clearly prejudices the present subrogation right of the injured party's insurer." (Emphasis *sic.*) *Id.* at 31, 521 N.E.2d at 455.

With regard to appellant's allegation that Sentry's contract failed to set forth its subrogation rights with clarity, we find this allegation to be without merit. The clause at issue provides:

"UNINSURED MOTORIST

"*INSURANCE*

" * * * *

### "TRUST AGREEMENT

"When we pay *you damages* under this insurance, *you* or *your* legal representative must agree in writing to repay us out of any *damages* recovered from anyone responsible for *your* injuries. *You* or *your* legal representative must also agree in writing to hold in trust and preserve for us all right of recovery.

"At our request, *you* must take any necessary action to recover the payments we've made under this insurance. *You* must do so in *your* own name and through a representative we select. Expenses of recovery will be repaid to us out of any *damages* recovered." (Emphasis *sic.*)

We find this language, although not as detailed, to be similar to the subrogation language found in Progressive Casualty Insurance Company's policy in *Bogan,* which follows in relevant part:

" 'Trust Agreement. In the event of payment to any person under this part:

" '(a) the company shall be entitled to the extent of such payment to the proceeds of any settlement or judgment that may result from the exercise of any rights of recovery of such person against any person or organization legally responsible for the bodily injury because of which such payment is made;

" '(b) such person shall hold in trust for the benefit of the company all rights of recovery which he shall have against such other person or organization because of the damages which are the subject of a claim made under this Part;

" '(c) such person shall do whatever is proper to secure and shall do nothing after loss to prejudice such rights;

" '(d) if requested in writing by the company, such person shall take, through any representative designated by the company, such action as may be necessary or appropriate to recover such payment as damages from such other person or organization, such action to be taken in the name of such person; in the event of a recovery, the company shall be reimbursed out of such recovery for expenses, costs and attorneys' fees incurred by it in connection therewith[.]' " *Id.* at 24, 521 N.E.2d at 449.

We acknowledge appellant's claim that Sentry did not term its provision a "subrogation" provision or include the word "subrogation" therein. Progressive in *Bogan,* termed its subrogation clause a "trust agreement," just like Sentry, and also did not use the word "subrogation" in its clause, just like Sentry.

Accordingly, appellant's second assignment of error is overruled.

■ Appellant proposes in her first assignment of error that an insured nevertheless has fifteen years to seek enforcement of an uninsured motorist provision based upon the statute of limitations for a contract action set forth in

R.C. 2305.06, absent an express limitation in the policy. She thus argues that if the trial court granted Sentry's motion for summary judgment because she notified Sentry of her claim over three years after the accident, the trial court erred in doing so.

Contrary to appellant's assertion that the insurance policy provided for no notice requirements, it required the insured to provide notice of an accident to Sentry "as soon as possible." Sentry recommended that the quickest way to provide notice was via the telephone.

In an insurance policy, notice "as soon as possible" means notice must be given within a reasonable time. *Zurich Ins. Co. v. Valley Steel Erectors* (1968), 13 Ohio App.2d 41, 42 O.O.2d 109, 233 N.E.2d 597. A delay of over one year is unreasonable as a matter of law. *Patrick v. Auto–Owners Ins. Co.* (1982), 5 Ohio App.3d 118, 5 OBR 235, 449 N.E.2d 790. An unreasonable delay is presumed prejudicial to the insured where no evidence is offered to the contrary. *Ruby v. Midwestern Indemn. Co.* (1988), 40 Ohio St.3d 159, 532 N.E.2d 730; *Patrick.*

Appellant herein was injured in an automobile accident on November 9, 1985. She notified Sentry about the accident on January 11, 1989, over three years after her claim arose. The issue that presents itself is whether this delay which is presumed unreasonable and prejudicial under *Patrick* and *Ruby* is demonstrated not to be prejudicial to Sentry.

A review of the record reveals that Terry, appellant's brother, was involved in an accident on October 21, 1985. He filed a claim with Sentry and received benefits for property damage. Appellant explains that even though she lived in the same household with Terry, she was totally unaware of the policy's existence until she notified Sentry of her claim in 1989. Sentry argues that since Terry was represented by an attorney associated with appellant's attorney, her claim of not knowing about the policy is false. Appellant counters that the fact that Terry's attorney was associated with appellant's attorney does not prove the former informed the latter of the policy.

Appellant's contention that her attorney was not aware of the policy is negated by a letter written by her attorney on October 20, 1987. In this letter, appellant's attorney requests information from Sentry with regard to Terry's October 1985 accident. At the earliest, therefore, appellant's attorney knew about Terry's insurance policy with Sentry on October 20, 1987, over a year before appellant notified Sentry about her claim.

It is generally recognized that a client will be affected by her attorney's notice or knowledge of facts. However, the information must be acquired in and during the transaction for which the attorney has been engaged. As a result, a

client is not bound by her attorney's knowledge not received in the course of or within the scope of his employment. *Gerl Constr. Co. v. Medina Cty. Bd. of Commrs.* (1985), 24 Ohio App.3d 59, 66, 24 OBR 113, 120, 493 N.E.2d 270, 278, citing *Drury v. Franke* (1933), 247 Ky. 758, 798, 57 S.W.2d 969, 985; *Trentor v. Pothen* (1891), 46 Minn. 298, 49 N.W. 129. In addition, a client will not be affected by facts acquired by an attorney while acting on behalf of another client. *Id.*, citing *Silbaugh v. Guardian Bldg. & Loan Assn.* (1940), 164 Or. 286, 292, 97 P.2d 943, 944.

Applying these concepts to the present case, this court cannot in good conscience assume that appellant was aware of her brother's policy with Sentry although her attorney was aware of it in 1987. Her attorney came into possession of this knowledge while representing another client in a different matter.

Finally, appellant explains the effect of her being unaware of the policy on her legal status, which she refers to as "a third party not in privity to her brother's insurance policy with defendant Sentry." She argues, therefore, that she cannot be charged with knowledge of the notice provision.

There is no dispute that appellant was an insured under Terry's policy with Sentry as a member of the family who is a resident of the household and not a car owner. She is thus included in the notice provision and is required to notify Sentry "as soon as possible" about any accident.

Based upon appellant's failure to notify Sentry of her accident and to provide any evidence that Sentry was not prejudiced by the delay, if the trial court summarily disposed of the declaratory judgment action based on delay of notice, it did so properly. See *Bilyeu v. Motorists Mut. Ins. Co.* (1973), 36 Ohio St.2d 35, 65 O.O.2d 179, 303 N.E.2d 871; *Fioresi v. State Farm Mut. Auto. Ins. Co.* (1985), 26 Ohio App.3d 203, 26 OBR 424, 499 N.E.2d 5; *Am. Select Ins. Co. v. Sheppard* (Jan. 24, 1991), Cuyahoga App. No. 57915, unreported, 1991 WL 6456; *Braden v. State Farm Mut. Ins. Co.* (June 6, 1985), Cuyahoga App. No. 48961, unreported, 1985 WL 6820.

Appellant's first assignment of error is overruled.

■ For her third assignment of error, appellant asserts that if her claim was timely, the trial court erred in determining that Sentry's anti-stacking provisions precluded her from accessing uninsured coverage under Terry's policy. Specifically, she argues that the "other insurance" clause is vague and ambiguous and should be construed in her favor.

R.C. 3937.18(G) provides:

"Any automobile liability or motor vehicle liability policy of insurance that includes coverages offered under division (A) of this section [uninsured and underinsured motorist coverage] may include terms and conditions that preclude stacking of such coverages."

Insurance companies are thus permitted to include anti-stacking language in any automobile liability policy of insurance. *Karabin v. State Auto. Mut. Ins. Co.* (1984), 10 Ohio St.3d 163, 10 OBR 497, 462 N.E.2d 403, paragraph one of the syllabus. "Stacking" means the lumping or adding together of payments or the aggregation of coverage. *Id.* at 166, 10 OBR at 499, 462 N.E.2d at 406, citing *Grange Mut. Cas. Co. v. Volkmann* (1978), 54 Ohio St.2d 58, 8 O.O.3d 70, 374 N.E.2d 1258. An anti-stacking provision will be upheld if it is "clear and conspicuous and in no way deceptive." *Karabin,* 10 Ohio St.3d at 167, 10 OBR at 499, 462 N.E.2d at 406; see, also, *Saccucci v. State Farm Mut. Auto. Ins. Co.* (1987), 32 Ohio St.3d 273, 512 N.E.2d 1160.

The contract language at issue reads in relevant part:

"OTHER INSURANCE

" * * *

"This insurance is primary for any *car* described on the declaration page, or any additional or replacement *car* we insure.

"This insurance is excess for the use of any *car* not owned by *you.*

"Occasionally there is other primary insurance available when this insurance is primary. Or there is other excess insurance available when this insurance is excess. When this happens the following rules apply:

" * * *

"UNINSURED MOTORIST INSURANCE—

"We'll pay only our share of any *damages.* Our share is determined by adding up the limits of this insurance that applies on the same basis and finding the percentage of the total which our limits represent. That percentage is applied to the amount of *damages* which doesn't exceed the highest limit of any one such policy." (Emphasis *sic.*)

We find this language to be clear and unambiguous as the Supreme Court of Ohio found the following similar language in *Saccucci* to be clear and unambiguous:

" 'If There Is Other Uninsured Motor Vehicle Coverage

" ' * * *

" '3. If the *insured* is injured while *occupying* a vehicle not owned by *you, your spouse* or any *relative,* this coverage applies:

" ' * * *

" 'If coverage under more than one policy applies as excess:

" 'a. the total limit of liability shall not exceed the difference between the limit of liability of the coverage that applies as primary and the highest limit of liability of any one of the coverages that apply as excess; and

" 'b. we are liable only for our share. Our share is that per cent of the damages that the limit of liability of this coverage bears to the total of all uninsured motor vehicle coverage applicable as excess to the accident.' " (Emphasis *sic.*) *Saccucci, supra,* 32 Ohio St.3d at 274, 512 N.E.2d at 1161; see, also, *Buckshaw v. Fuchs* (Oct. 3, 1991), Cuyahoga App. Nos. 59139 and 59140, unreported, 1991 WL 199534.

In the instant case, appellant was paid $50,000 from her mother's insurer on an uninsured motorist claim. The total available coverage for appellant by way of "other insurance" equals her limit of liability under the uninsured provision with Sentry, $50,000 per accident. Accordingly, pursuant to the anti-stacking provision contained in the Sentry policy, which provision is clear and unambiguous, appellant is precluded from accessing her uninsured coverage thereunder. *Saccucci; Buckshaw.* The result remains the same even though appellant sought uninsured coverage under two separate policies with two different companies. See *Buckshaw.*

 Appellant next addresses the alleged nonconspicuous position of the "other insurance" clause in the Sentry policy. She proffers that the clause was placed near the end of the policy, not under the "uninsured" portion of it, and argues that she could not possibly be called upon to have found it.

"The meaning of a contract is to be gathered from a consideration of all its parts, and no provision is to be wholly disregarded as inconsistent with other provisions unless no other reasonable construction is possible." *Travelers Indemn. Co. v. Reddick* (1974), 37 Ohio St.2d 119, 121, 66 O.O.2d 259, 260, 308 N.E.2d 454, 455.

Moreover, an insured is charged with knowledge of the contents of his insurance contract. *Grange Mut. Cas. Co. v. Fodor* (1984), 21 Ohio App.3d 258, 21 OBR 302, 487 N.E.2d 571, citing *Florsheim v. Travelers Indemn. Co. of Ill.* (1979), 75 Ill.App.3d 298, 30 Ill.Dec. 876, 393 N.E.2d 1223.

In the present case, the "other insurance" clause was conspicuously placed under the heading, *"GENERAL POLICY PROVISIONS,* **Other Insurance,** UNINSURED MOTORIST INSURANCE." (Emphasis *sic.*) See *Dues v. Hodge* (1988), 36 Ohio St.3d 46, 521 N.E.2d 789; *Motorists Ins. Cos. v. Webster* (Oct. 8, 1992), Cuyahoga App. No. 61096, unreported, 1992 WL 281363; *Estate of*

*Donnell v. Motorists Mut. Ins. Co.* (June 2, 1988), Cuyahoga App. No. 55100, unreported, 1988 WL 57966. Since the meaning of a contract is to be ascertained from the entire contract and an insured is charged with knowledge of the entire contract, appellant's allegation that she "overlooked" the provision because of its placement is not legally valid.

In conclusion, if the trial court granted Sentry's motion for summary judgment based upon its anti-stacking provision in the insurance policy, the trial court's decision was proper.

Appellant's third assignment of error is overruled.

*Judgment affirmed.*

DYKE, C.J., and PRYATEL, J., concur.

AUGUST PRYATEL, J., retired, of the Eighth Appellate District, sitting by assignment.