**COMBS et al., Appellants,**

**v.**

**NATIONWIDE MUTUAL INSURANCE COMPANY, Appellee.**

[Cite as *Combs v. Nationwide Mut. Ins. Co.* (1997), 119 Ohio App.3d 137.]

Court of Appeals of Ohio,
Twelfth District, Butler County.

No. CA96–10–215.

Decided April 14, 1997.

*Holbrock & Jonson, George N. Jonson* and *Timothy R. Evans,* for appellants.
*Samuel G. Casolari, Jr.,* for appellee.

WALSH, Judge.

Plaintiffs-appellants, Charles R. and Shirley Combs, appeal an order sustaining a motion for summary judgment filed by defendant-appellee, Nationwide Insurance Company ("Nationwide").

In May 1992, Charles R. Combs was injured in an automobile accident with the tortfeasor, Francis Mainous. Mainous had liability insurance with Aetna Casualty and Surety Company in the amount of $100,000. Appellant had uninsured/underinsured motorist ("UM") coverage with Nationwide in the amount of $500,000 per person and $1,000,000 per accident. Appellant's UM policy contained the following provision:

"No payment will be made until the limits of all other liability insurance and bonds that apply have been exhausted by payments."

In April 1994, appellant sued Mainous for negligence. The parties agreed to settle the claim for $62,500, and appellant sought Nationwide's consent to the settlement before pursuing UM coverage. In a letter dated May 1, 1995, Nationwide stated that because the "tortfeasor's limits [were] not sufficiently exhausted," there was not a valid underinsurance claim. Nationwide stated further that a settlement of $62,500 would constitute an abandonment of the underinsurance claim. Appellant settled the claim for $62,500. He then filed suit against Nationwide. Nationwide moved for summary judgment. The trial court granted summary judgment to Nationwide, finding on undisputed facts that the settlement of $62,500 was not sufficient to "exhaust" the $100,000 liability policy and, therefore, appellants were not entitled to UM benefits as a matter of law.

In their sole assignment of error, appellants argue that the trial court's granting of summary judgment was in error. Appellants contend that under the authority of *Bogan v. Progressive Cas. Ins. Co.* (1988), 36 Ohio St.3d 22, 521 N.E.2d 447, they satisfied the "exhaustion requirement" in their UM policy when

they settled their claim with the tortfeasor's liability carrier for $62,500, or 62.5 percent of the value of the policy.

In *Bogan*, the tortfeasors had liability insurance in the amount of $25,000, and the injured insureds settled their case against the tortfeasors for $21,000, or $4,000 less than the liability policy limit. The Supreme Court preceded its discussion of the issues in that case by mentioning a list of public policy considerations that generally argue in favor of settlements over litigation. These include avoiding litigation "with its attendant expenses and resultant burden upon the legal system," "hasten[ing] the payment to the injured party who obviously needs compensation soon after the injuries when the medical expenses begin to amass and when the anxiety level is probably quite high," and precluding "problems of proof." *Bogan*, 36 Ohio St.3d at 26, 521 N.E.2d at 451.

Addressing the exhaustion requirement, the court in *Bogan* noted the plain meaning of the word "exhaust," but declined to construe the term literally to find that a liability policy must be wholly paid upon before an insured can collect UM insurance. Instead, the court held:

"An injured insured satisfies the 'exhaustion' requirement in the underinsured motorist provision of his insurance policy when he receives from the underinsured tortfeasor's insurance carrier a commitment to pay *an amount* in settlement with the injured party retaining the right to proceed against his underinsured motorist insurance carrier only for those amounts in excess of the tortfeasor's policy limits." (Emphasis added.) *Id.* at paragraph two of the syllabus.

Following *Bogan*, other appeals courts addressing the exhaustion requirement have combined the Supreme Court's general discussion of litigation expenses with the particular facts of that case to engage in a kind of numerical calculation. They have found that a settlement amount satisfies the exhaustion requirement as long as the "gap" between the actual settlement amount and the maximum amount available under the liability policy approximates litigation costs saved. This approach was first adopted in *Queen City Indemn. Co. v. Wasdovich* (May 31, 1990), Cuyahoga App. No. 56888, unreported, 1990 WL 71536. Citing *Bogan*, the court concluded that a $20,000 settlement on a $50,000 liability policy did not fulfill the "exhaustion requirement" because $30,000 was neither a "genuine savings in litigation expenses as contemplated in *Bogan*" nor "as a matter of practicality receipt of the entire proceeds of the policy." *Id.* at 2. As Nationwide points out, the rationale of *Queen City* was followed in *Stahl v. State Farm Mut. Auto. Ins. Co.* (1992), 82 Ohio App.3d 599, 612 N.E.2d 1260 (relying on *Queen City*, the Third District found that a $1,500 settlement did not exhaust a $50,000 liability policy); and *Motorists Mut. Ins. Cos. v. Grischkan* (1993), 86 Ohio App.3d 148, 620 N.E.2d 190 (citing *Queen City*, the Eighth District determined

that a $75,000 settlement did not exhaust a $100,000 liability policy where projected litigation expenses were $10,000).

Notwithstanding this trend among other appellate courts, we do not agree that *Bogan* supports the analysis first used in *Queen City*. *Bogan* states plainly that the exhaustion requirement is satisfied if an injured party settles for *any* amount with the liability insurer as long as the UM carrier receives credit for the entire amount of the liability policy, that is, as long as the UM carrier is responsible only for amounts in excess of the full amount of the liability policy. *Bogan,* paragraph two of the syllabus. "[T]he objective of the exhaustion clause * * * is quite clearly to *absolve the [UM] insurer from liability for those uncollected amounts which were below the stated limits of the underinsured tortfeasor's policy.*" (Emphasis added.) *Id.,* 36 Ohio St.3d at 28, 521 N.E.2d at 453.

The trial court expressed concern that a decision such as this one would expose the UM carriers to increased litigation, "*i.e.,* get rid of the tortfeasor defendant and substitute in his place an insurance company defendant." The Supreme Court addressed this issue in *Bogan,* stating that the exhaustion clause prevents an insured from abandoning his claim against the liability insurer and proceeding directly against the UM carrier by serving as a valid precondition to UM coverage.

The standard of review for summary judgment is the same for both trial and appellate courts. *Lorain Natl. Bank v. Saratoga Apts.* (1989), 61 Ohio App.3d 127, 129, 572 N.E.2d 198, 199–200. Summary judgment will be granted if there are no genuine issues of material fact and, when viewing the evidence in a light most favorable to the nonmoving party, reasonable minds could only conclude that the moving party is entitled to judgment as a matter of law. Civ.R. 56(C); *Bostic v. Connor* (1988), 37 Ohio St.3d 144, 146, 524 N.E.2d 881, 883–884. There being no disputed facts, we find, based on the foregoing, that the trial court erred as a matter of law in granting summary judgment to Nationwide. Therefore, we reverse the judgment of the trial court and remand this cause for further proceedings.

*Judgment reversed.*

KOEHLER, J., concurs.

POWELL, P.J., dissents.

POWELL, Presiding Judge, dissenting.

I disagree with the majority's interpretation of the Ohio Supreme Court's decision in *Bogan v. Progressive Cas. Ins. Co.* (1988), 36 Ohio St.3d 22, 521

N.E.2d 447. Therefore, I dissent and would affirm the judgment of the trial court.

I concur with the analyses set forth by the Eighth Appellate District in *Motorists Mut. Ins. Cos. v. Grischkan* (1993), 86 Ohio App.3d 148, 620 N.E.2d 190, and *Queen City Indemn. Co. v. Wasdovich* (May 31, 1990), Cuyahoga App. No. 56888, unreported, and by the Third Appellate District in *Stahl v. State Farm Mut. Auto. Ins. Co.* (1992), 82 Ohio App.3d 599, 612 N.E.2d 1260. These decisions interpret *Bogan* as holding that an insured has not exhausted the tortfeasor's liability policy unless the "gap" between the settlement amount accepted by the insured and the liability limit of tortfeasor's policy approximates the litigation costs saved.

The $37,500 gap between the settlement amount accepted by the appellants in this case and the $100,000 liability limit imposed by Mainous's policy simply does not bear any relationship to the actual costs appellants saved by choosing settlement over litigation. The trial court properly found that appellants are not entitled to underinsured motorist coverage on these facts under the rule enunciated in *Bogan*. Accordingly, I would affirm the judgment of the trial court.