OPINION
Although this appeal was originally assigned to the accelerated docket, this court elects to render a full opinion in accordance with Loc.R. 12(5).
Appellant, Catherine Fulmer, appeals a judgment of the Court of Common Pleas of Seneca County, denying her declaratory judgment, and granting summary judgment in favor of Appellee, Insura Property and Casualty Insurance Co., d/b/a The Shelby Insurance Group, d/b/a Anthem Casualty Insurance Group, d/b/a Shelby Insurance Companies (hereinafter "Insura"), on Appellant's underinsured motorists claim.
On September 11, 1995, Appellant was severely injured when her automobile was rear-ended by an automobile driven by Albert Kulics, the tortfeasor in this action. Appellant sustained injuries in the accident, resulting in her claim that the cause of action was worth in excess of $150,000. At the time of the accident, the tortfeasor held an Allstate automobile insurance policy with liability limits of $50,000 per person and $300,000 per accident, and Appellant held an Insura automobile policy with liability limits of $100,000 per person and $300,000 per accident.
Subsequently, Appellant sought the consent of Insura to settle the matter with the tortfeasor's insurer for $37,500. However, Insura immediately denied Appellant's request, stating that it believed her claim to be worth less than the value of the tortfeasor's policy limit. Thereafter, without Insura's consent, Appellant settled the matter with the tortfeasor's insurer for $37,500. On October 26, 1998, Appellant notified Insura of the settlement and requested arbitration to determine whether she was entitled to underinsured motorist benefits. On November 6, 1998, Insura rejected the demand for arbitration, stating that pursuant to Appellant's insurance policy the settlement of $37,500 failed to "exhaust" the tortfeasor's policy limit.
Subsequently, on January 22, 1999, Appellant filed a complaint seeking a declaratory judgment that she was entitled to underinsured motorist benefits. On September 14, 1999, Insura moved for summary judgment. On November 24, 1999, the trial court held that the gap of $12,500, the difference between the settlement and the tortfeasor's policy limit, did not constitute an exhaustion of the policy for legal or practical purposes.
Appellant timely appeals the judgment of the trial court, assigning one error for our review.
 The trial court erred in granting the Defendant insurance company's motion for summary judgment and in denying Plaintiff Catherine Fulmer a declaratory judgment in its "Journal Entry of Judgment" filed November 24, 1999.
In reviewing the propriety of a summary judgment, an appellate court reviews the issue under the same standard as the trial court. Lorain Natl. Bank v. Saratoga Apts. (1989),61 Ohio App.3d 127, 129. It is axiomatic that a trial court is without authority to grant summary judgment unless it can be demonstrated that:
 (1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party.
Temple v. Wean United (1977), 50 Ohio St.2d 317, 327; Civ.R. 56(C).
In this case, we are asked to consider the extent to which Appellant must exhaust the underinsured tortfeasor's policy limits, and the extent to which Appellant's insurer may enforce protection of its subrogation rights. Although the trial court only addressed the exhaustion issue in its judgment entry, we will address both issues below.
 I. Exhaustion Clause
The dispute in this matter arises over a portion of Appellant's automobile insurance policy, which states:
 We will pay compensatory damages which an insured is legally entitled to recover from the owner or operator of an uninsured motor vehicle because of bodily injury caused by an accident. The owner's or operator's liability for these damages must arise out of the ownership, maintenance or use of the uninsured motor vehicle.
 We will pay under this coverage only if 1 or 2 below applies:
 1. The limits of liability under any applicable bodily injury liability bonds or policies have been exhausted by payment of judgments or settlements. * * *
In addition to the exhaustion clause above, a consent clause in Appellant's automobile insurance policy states in pertinent part:
 No legal action may be brought against us until there has been full compliance with all the terms of this policy. In addition, under Part A, no legal action may be brought against us until:
 1. We agree in writing that the insured has an obligation to pay; or
 2. The amount of that obligation has been finally determined by judgment after trial.
The Ohio Supreme Court has previously addressed the issue of exhaustion clauses in automobile insurance policies, stating that "the objective of the exhaustion clause in the underinsured motorist insurance policy is quite clearly to absolve the insurer from liability for those uncollected amounts which were below the stated limits of the underinsured tortfeasor's policy." Bogan v. Progressive Casualty InsuranceCo. (1988), 36 Ohio St.3d 22 at 28. In addition, the Court inBogan held:
 An injured insured satisfies the "exhaustion" requirement in the underinsured motorist provision of his insurance policy when he receives from the underinsured tortfeasor's insurance carrier a commitment to pay an amount in settlement with the injured party retaining the right to proceed against his underinsured motorist insurance carrier only for those amounts in excess of the tortfeasor's policy limits.
 Id. at paragraph two of the syllabus.
In Bogan, the Court acknowledged that there are "a number of considerations which militate in favor of settlement between the underinsured tortfeasor's insurer and the injured party." Bogan, at 25. The Court also stated that "[w]here the amount of settlement is less than the policy limits, the unpaid amount may well represent the savings in litigation costs for both sides."Id. at 26.
In Stahl v. State Farm Mutual Automobile Insurance Co. (1992),82 Ohio App.3d 599, this court addressed the issue of saving litigation costs. Therein, we determined that the tortfeasor's policy limit of $50,000 was not exhausted by a settlement of $1,500 between the underinsured tortfeasor's insurer and the injured party for injuries sustained in an automobile accident. In doing so, we followed the rationale in Queen City Indemn. Co.v. Wasdovich (May 31, 1990), Cuyahoga App, No. 56888, unreported, in which the court stated:
 We find that the settlement here for thirty thousand dollars less than the tortfeasor's liability limit does not represent a genuine savings in litigation expense as contemplated in Bogan or as a matter of practicality receipt of the entire proceeds of the policy. Rather, we find that the [injured parties'] settlement with [the tortfeasor's insurance company] for substantially less than [the policy limits] constituted an abandonment of their claim.
Despite the reasoning in Bogan and Stahl, however, Appellant urges us to abandon our decision in Stahl, and instead adopt the reasoning in Combs v. Nationwide Mutual Insurance Co.
(1997), 119 Ohio App.3d 137. In Combs, the Twelfth District Court of Appeals interpreted the phrase "an amount in settlement", contained in paragraph two of the syllabus inBogan, to mean that the exhaustion requirement is satisfied if "an injured party settles for any amount with the liability insurer as long as the UM carrier receives credit for the entire amount of the liability policy. . ." Id. at 140.
Although the trial court in Combs recognized that such a decision would expose insurers to increased litigation, the Twelfth District noted that the Court in Bogan already addressed this issue by preventing an insured from abandoning the claim against the liability insurer and proceeding directly against his or her insurer. We disagree with the decision in Combs, and decline to following its reasoning.
What Combs failed to address is the issue of saving litigation costs, which was raised in Bogan, and further discussed by this court in Stahl. As set forth in Bogan and Stahl, a large factor in determining whether an injured insured has exhausted an underinsured tortfeasor's policy, is whether the gap between the settlement amount and the underinsured tortfeasor's policy limit represents a genuine savings in litigation expenses.
Applying the reasoning in Bogan and Stahl, we find that Appellant has not demonstrated an issue of fact regarding whether the $12,500 gap represents a genuine savings in litigation expenses. In her response to Appellee's motion for summary judgment, Appellant argues that trial preparation expenses will amount to $15,000, which includes the videotape depositions of three treating physicians, and an accident reconstructionist. Other than these bald statements, however, there are no affidavits from Appellant's attorney, any expert witnesses, or any of her treating physicians, which might establish the facts concerning whether the settlement represents a genuine savings in litigation expenses and, therefore, constitutes an exhaustion of the underinsured tortfeasor's policy limit. Since the unsworn argument of counsel does not provide the verification required by Civ.R. 56 and since Appellant had the burden of producing evidence as to the issue of exhaustion, she failed to sustain her burden. Wing v. Anchor Media, Ltd. of Texas (1991), 59 Ohio St.3d 108
. Therefore, we can identify no disputed issue of material fact precluding the trial court's grant of summary judgment.
Our holding herein should in no way be construed to imply a rule of percentage of "gap" or of any maximum amount of money beyond which exhaustion of limits may or may not be presumed. The determination of exhaustion will depend in each case upon the facts peculiar to the litigation expenses that would be involved in the further prosecution of that specific case. Appellant herein had a burden of establishing a factual issue as to whether the difference between the settlement and the policy limits represented a genuine savings in litigation expense as contemplated in Bogan, and she simply failed to sustain her burden.
Accordingly, we find that summary judgment was properly granted in favor of Insura with respect to the exhaustion clause in Appellant's automobile liability policy.
 II. Subrogation Rights
Insura's subrogation rights are set forth in a portion of Appellant's automobile insurance policy, which states:
 If we make a payment under this policy and the person to or for whom payment was made has a right to recover damages from another we shall be subrogated to that right. That person shall do:
 1. Whatever is necessary to enable us to exercise our rights; and
2. Nothing after loss to prejudice them.
With respect to an insurer's subrogation rights in an underinsured motorist insurance policy, the Supreme Court of Ohio first stated:
 An insurer providing underinsured motorist coverage is not required to give its consent to a proposed settlement, the terms of which would destroy its right of subrogation provided within the underinsured motorist insurance policy.
 Bogan, at paragraph five of the syllabus. However, several years later, the Court modified paragraph five of the syllabus in Bogan, stating:
 When an insured has given his underinsurance carrier notice of a tentative settlement prior to release, and the insurer has had a reasonable opportunity to protect its subrogation rights by paying the underinsured motorist benefits before the release but does not do so, the release will not preclude recovery of underinsurance benefits. (Bogan v. Progressive Cas. Ins. Co. [1985], 36 Ohio St.3d 22, modified and explained.)
 McDonald v. Republic-Franklin Ins. Co. (1989), 45 Ohio St.3d 27, syllabus 2. In effect, the Court in McDonald stated that the decision in Bogan did not require the conclusion that in every case, merely withholding consent to a settlement would necessarily protect the insurer's subrogation rights, and thereby place the entire burden of protection on the insured in every situation.
Appellant relies on McDonald in arguing that her underinsured motorist coverage survives her release of the underinsured tortfeasor from liability. Appellant argues that Insura had ample opportunity to protect its subrogation rights, but failed to do so. Insura, however, argues that McDonald is factually inapplicable. Instead, Insura urges this court to adopt the reasoning by the Eighth District Court of Appeals in MotoristsMutual Insurance Companies v. Grischkan (1993), 86 Ohio App.3d 148, which distinguished Bogan from McDonald.
In Grischkan, the appellant brought an action against his insurer for underinsured motorist benefits after accepting a $75,000 settlement offer from the underinsured tortfeasor's insurer. At the time, the appellant had an underinsured policy limit of $500,000, and the underinsured tortfeasor had a policy limit of $100,000. Prior to settling the matter the appellant requested that his insurer consent to the settlement offer. However, the appellant's insurer denied consent, taking the position that the appellant's claim was worth less than the underinsured tortfeasor's $100,000 policy limit.
Thereafter, the court in Grischkan found Bogan, and notMcDonald to be controlling as the facts more closely resembleBogan. In Bogan, the injured insureds sought underinsured motorist benefits from their insurer after settling with the tortfeasors' insurance company. The Bogans' insurer, however, denied underinsured motorist benefits based on the fact that the Bogans had failed to exhaust the tortfeasors' policy limit.
In McDonald, on the other hand, the injured insured's insurer, after receiving notice of a pending settlement offer, never advised its insured, or gave any direction as to how to proceed with respect to the underinsured motorist claim. Instead, the insurer waited until its insured settled the matter with the underinsured tortfeasor's insurer before raising the issue of protection of its subrogation rights. Ultimately, the Court ruled that a question of fact existed concerning whether the injured insured's insurer responded within a reasonable time after being notified by its insured of the underinsured tortfeasor's settlement offer.
In reaching its decision, the court in Grischkan initially noted that although the McDonald decision modified paragraph five of the syllabus in Bogan, the decision in Bogan was not otherwise overruled. The court then held that the "relevant inquiry is whether the insurer reasonably responded to a settlement offer."Grischkan, at 155.
The court in Grischkan reasoned that the injured insured's insurer did not base its refusal to consent to the settlement solely on the fact that the insured failed to exhaust the tortfeasor's policy limits. Instead, the insurer refused to consent to the settlement because it believed that the insured's claim was not worth in excess of the tortfeasor's policy limit. The court also noted that the insurer responded quickly by letter stating its position regarding its insured's claim. Additionally, the court stated:
 The Grischkans offered no evidence whatsoever concerning the injuries sustained by Dr. Grischkan as a result of the collision with Macko. Otherwise, the reasonableness of Motorists' position that Dr. Grischkan's injuries did not exceed $100,000 would be a factual question which would require the denial of the parties' motions for summary judgment.
 Grischkan, at 155.
We agree with the reasoning set forth in Grischkan, above. As in Grischkan, although the facts in the case sub judice differ from both Bogan and McDonald, they more closely resemble Bogan. Unlike the facts in McDonald, Insura responded within a reasonable time to Appellant's request for consent to settle. In letters dated October 21, 1998, and November 6, 1998, Insura set forth its position that Appellant's claim was worth less than the tortfeasor's policy limit and, as a result, refused to consent to the settlement agreement. These letters were written immediately after Insura's receipt of two letters from Appellant's attorney, requesting consent to settle, and informing Insura of Appellant's acceptance of the settlement agreement, which were dated October 19, 1998, and October 26, 1998, respectively.
Not only is there no question of fact regarding the timeliness of Insura's response to Appellant's request for consent, there is also no question of fact regarding the reasonableness of Insura's belief that Appellant's claim does not exceed the underinsured tortfeasor's policy limit. As in Grischkan, Appellant has set forth no facts concerning her injuries sustained as a result of the accident. There are no medical records, records of lost wages, or affidavits of any kind in the record, which support Appellant's claim. Otherwise, the reasonableness of Insura's position that its insured's claim amounted to less than the underinsured tortfeasor's policy limit would be a question of fact.
Therefore, we also find that Appellant failed to establish a genuine issue as to a material fact that would have precluded the trial court from finding that she destroyed her insurer's subrogation rights by settling this matter without the consent of her insurer.
Accordingly, Appellant's assignment of error is not well taken and is therefore overruled.
Having found no error prejudicial to the Appellant herein, in the particulars assigned and argued, we hereby affirm the decision of the trial court.
 ___________________________ WALTERS, J.
SHAW, J., concurs.
BRYANT, J., concurs separately and in part only.