CITY OF MANCHESTER

v.

GENERAL REINSURANCE CORPORATION & a.

April 11, 1986

*Elmer T. Bourque*, City Solicitor (*James M. Warren*, attorney, on the brief), by brief for the City of Manchester.

*Michael B. O'Shaughnessy*, of Manchester, and *William P. Tocchi*, of Manchester, by brief for the Covenant Insurance Group.

SOUTER, J. This appeal by the City of Manchester challenges a decree of the Superior Court (*Pappagianis*, J.) disposing of a petition for declaratory judgment to determine insurance coverage. The court ruled that a policy issued by the defendant Covenant Insurance Group would not cover the city's contractual obligation to indemnify a city employee against liability arising from a motor vehicle accident in the course of employment. We affirm.

On October 28, 1977, William C. Haley was acting within the scope of his duties as a city employee while driving a Manchester

Highway Department truck. When the truck hit a pothole, another employee, Albert Pinard, fell from the rear platform and received fatal injuries. Mr. Pinard's administratrix has brought wrongful death actions against Mr. Haley and the city. In addition to possible direct and vicarious liability to the Pinard estate, the city faces a potential obligation to indemnify Mr. Haley if he is found liable. The city's obligation to Mr. Haley is said to arise under a resolution adopted by the Manchester Board of Mayor and Alderman in 1975, by which they voted to indemnify all city employees against liability arising from the discharge of their duties. *See* RSA 31:105 (Supp. 1985). The parties here do not contest the enforceability of that resolution as a term of the contract between the city and Mr. Haley.

Four petitions for declaratory judgment under RSA 491:22 were filed to determine coverage claimed by the city or Mr. Haley under four insurance policies issued to the city and under which the city is an insured: an employer's liability policy issued by General Reinsurance Corporation; a comprehensive automobile liability policy issued by Home Insurance Company; a general liability policy issued by Covenant Insurance Group; and an umbrella policy issued by United States Liability Insurance Company. The superior court ruled, *inter alia*, that Covenant's general liability policy would not cover any contractual obligation of the city to indemnify Mr. Haley if he is found liable in the underlying death action brought against him. The city appeals this ruling.

In reaching its decision, the trial court relied upon several policy exclusions. Confining our analysis to the exclusions considered by the trial court, we believe that at least one of them is dispositive. Exclusion (b)(1) excludes coverage for *"bodily injury* . . . arising out of the . . . operation [or] use . . . of . . . *any automobile* . . . owned . . . by . . . *any insured."* The policy defines "automobile" as a "land motor vehicle designed for travel on public roads," and "bodily injury" as including death resulting from such injury. Since the claim that underlies the city's potential liability as an indemnitor is a claim for death resulting from operation of a city-owned motor vehicle, the trial court found that the quoted language excludes coverage.

The city submits that this is error, resulting from a failure to recognize other policy terms that create ambiguity about coverage of the city's liability in question. The city argues that the applicability of these terms is apparent as soon as one recognizes the basic distinction between the nature of Mr. Haley's alleged liability and that of the city.

If Mr. Haley is found to be liable in the death action, his liability will be based in tort and will arise from the operation of a motor

vehicle. But if the city is found to be liable to Mr. Haley, that liability will be based in contract and will arise from the resolution expressing an agreement to indemnify city employees. The city points out that the coverage claimed under the Covenant policy is not for Mr. Haley's tort liability but for the city's contractual liability as an indemnitor.

Based on this distinction, the city argues that it is entitled to coverage under certain basic policy terms, when read in combination with a significant provision contained in a "broadened coverage endorsement." Exclusion (a) of the basic policy provides that there is no insurance against "liability assumed by the *insured* under any contract or agreement except an *incidental contract*." Exclusion (j) provides that the policy does not apply to

> "*bodily injury* to any employee of the *insured* arising out of or in the course of his employment by the *insured* or to any obligation of the insured to indemnify another because of damages arising out of such injury; but this exclusion does not apply to liability assumed by the *insured* under an *incidental contract*."

*See Royal Globe Ins. Co. v. Poirier*, 120 N.H. 422, 427, 415 A.2d 882, 885 (1980) (exclusion (j) inserted "to avoid duplication of coverage with respect to the subject matter covered by a standard 'Workmen's Compensation and Employer's Liability Policy'"). In each instance, the city argues, the policy excepts coverage for liability assumed under an "incidental contract" from exclusions of coverage for contractual liability, thus suggesting that coverage exists for liability under an "incidental contract."

The city then points to the definition of "incidental contract" in the broadened coverage endorsement, as "any contract or agreement relating to the conduct of the named insured's business." Because this definition is broad enough to include the indemnity contract in question, the city submits that the exceptions to exclusions (a) and (j) and the broadened coverage endorsement's definition of "incidental contract" have the combined effect of providing coverage for the city's contractual liability as an indemnitor.

This conclusion, in the city's view, conflicts with the application of exclusion (b) for liability arising out of the operation of an automobile and therefore creates ambiguity about the coverage of the city's contractual liability as an indemnitor. If the liability is seen as arising ultimately from operation of a motor vehicle there is no coverage; if it is seen as arising immediately under an incidental contract there is coverage. The city submits that it is entitled to prevail under the rule in *Trombly v. Blue Cross/Blue Shield of New*

*Hampshire-Vermont,* 120 N.H. 764, 423 A.2d 980 (1980), that coverage ambiguities will be resolved against the insurer and in favor of the insured.

Such is the rule in *Trombly,* and if we accept the city's position that the policy terms create an ambiguity about coverage of the city's liability as indemnitor, then the city wins. The case turns, therefore, on whether there is a genuine ambiguity.

In addressing this issue we will leave aside any difficulty inherent in the position that exceptions to exclusions give rise to coverage, for the parties did not raise that issue. Instead we will look to the basic standards for determining whether an arguable inconsistency creates a genuine ambiguity. The sound application of *Trombly* depends, after all, on the application of these standards.

■■ Policy language means what a reasonable person would construe it to mean, *Spaulding v. Concord Gen. Mut. Ins. Co.,* 122 N.H. 515, 516, 446 A.2d 1172, 1173 (1982), and policy terms can create ambiguity as to coverage only when the parties may reasonably differ about their interpretation. *Laconia Rod & Gun Club v. Hartford Acc. & Indemn. Co.,* 123 N.H. 179, 182, 459 A.2d 249, 251 (1983). We determine what is reasonable by considering a policy as a whole and on the basis of a more than casual reading, *Trombly,* 120 N.H. at 768–69, 423 A.2d at 983, evaluating any claimed ambiguity by reference to the context in which the relevant language occurs. *Robbins Auto Parts, Inc. v. Granite State Ins. Co.,* 121 N.H. 760, 764, 435 A.2d 507, 509–10 (1981). We will not force language to create an ambiguity in order to resolve it against the insurer, when it is clear from contextual analysis that no coverage was intended. *Id.*

In applying these interpretive principles, the trial court found that the incidental contract exceptions to exclusions (a) and (j) cannot reasonably be read to provide coverage for liability arising from operation of a motor vehicle when the latter coverage is excluded without any reference to an incidental contract. The trial court thus concluded that there was no genuine ambiguity to be resolved in the city's favor. The following considerations persuasively support the trial court's conclusion.

The broadened coverage endorsement that is so crucial to the city's position indicates that the basic policy exclusions remain in force. The endorsement describes certain further exclusions of its own as "additional," suggesting that the endorsement's exclusions do not modify or supersede those of the original policy. Thus, in deciding whether ambiguity exists, we must account for the parties' manifest intent to retain the basic exclusions, including the automobile exclusion (b).

In determining the scope of that exclusion, it is significant that in one respect it is unlike the contract exclusion (a) and the employee injury exclusion (j). The automobile exclusion (b) contains no exception recognizing the city's right to increase its covered liability by making incidental contracts in the form of indemnity agreements. This difference underscores the obvious purpose of exclusion (b), to preclude duplication of the coverage customarily provided under a comprehensive automobile liability policy, such as the policy issued to the city by Home Insurance Company. Despite this obvious purpose, if we were to accept the city's position, the city could unilaterally convert a general liability policy without motor vehicle coverage into a motor vehicle policy providing such coverage, simply by making an indemnity agreement. Every instance of the city's vicarious liability for its employees' motor vehicle negligence would then be covered ultimately under the general liability policy. Such a result would ignore the obvious verbal differences between exclusions (a) and (j) and exclusion (b), and would defeat the equally obvious intent to preclude the duplication of motor vehicle coverage.

That obvious intent to avoid motor vehicle coverage would not be the only victim of the city's interpretation, however. Under that interpretation, incidental contract coverage would include any indemnification liability, whatever the nature and source of the underlying liability indemnified. Thus, under the exception to exclusion (j) for bodily injury to an employee, the city would be covered as an indemnitor of any city employee against liability for bodily injury to a co-employee. Yet this result would effectively negate the provision of Section VIII of the broadened coverage endorsement, excluding coverage of a city employee as an additional insured for liability arising from bodily injury to a co-employee.

Each of these examples indicates where the city goes astray in its argument for ambiguity. The city starts with the premise that certain specific exclusions are subject to exception for liability under incidental contracts. The city then infers that it is covered for liability under any incidental contract, regardless of the contract's subject matter in relation to those specific exclusions. If this reasoning were sound, contractual exceptions to specific exclusions would empower the city to remove virtually all limitations on the subject matter of coverage. This is the tacit premise in the city's argument that the trial court rejected as unreasonable.

■ We, too, reject that premise as unreasonable. The preceding considerations demonstrate to us that the automobile exclusion is intended to control and to limit the coverage of the city as indemnitor when the indemnified employee's liability arises from the opera-

tion of a motor vehicle. Adopting the city's argument would necessarily misapply the rule in *Trombly* so as to "create coverage where it is clear that none [was] intended." *Robbins Auto Parts, Inc.*, 121 N.H. at 764, 435 A.2d at 509.

*Affirmed.*

All concurred.