Hillsborough
No. 87-021

AMICA MUTUAL INSURANCE COMPANY

v.

MICHAEL MORRISON & a.

December 31, 1987

*Sulloway, Hollis & Soden,* of Concord (*Robert J. Lanney* on the brief and orally), for the plaintiff.

*Sheehan, Phinney, Bass & Green P.A.,* of Manchester (*W. Michael Dunn* and *Douglas G. Verge* on the brief, and *Mr. Verge* orally), for the defendants.

BATCHELDER, J. This appeal involves rights under an underinsured motorist arbitration agreement in a motor vehicle liability insurance policy. The underinsured motorist insurance carrier, Amica Mutual Insurance Company (Amica), filed a petition for declaratory judgment after it had refused to pay the insureds, the Morrisons, arbitration awards that amounted to less than the tortfeasor's total liability insurance coverage. Finding that the plaintiff insurance carrier was not obligated to pay such awards, the Superior Court (*Pappagianis,* J.) granted the petition in favor of the insurance company, and the insureds appeal. For the reasons that follow, we affirm.

The declaratory judgment petition arises out of an automobile accident which is the subject of an agreed statement of facts. Mariane Morrison was driving an automobile with her daughter as a passenger when another automobile, driven by the tortfeasor, Michael Bolton, struck her car, causing injuries to both Mariane and her daughter. At the time of the accident, Mariane Morrison was insured by an Amica motor vehicle liability policy which provided at least $100,000 of uninsured/underinsured motorist coverage. Michael Bolton was insured through two separate policies which provided a total of $75,000 in liability insurance coverage.

After the Morrisons started negotiating with one of the tortfeasor's insurers, they initiated an arbitration claim against Amica for a payment of $200,000 under the uninsured/underinsured motorist provisions of their policy, without filing any lawsuits against the

tortfeasor. The Morrisons believed, and Amica did not claim otherwise, that because their damages exceeded the tortfeasor's insurance coverage, the tortfeasor was an uninsured motorist under the insureds' policy, and the insureds were therefore entitled to proceed directly against Amica under the uninsured motorist arbitration agreement.

Although Amica agreed to arbitrate, it warned the Morrisons that it would not be obligated to pay under the policy if the arbitration award was less than the tortfeasor's total insurance coverage. The Morrisons disagreed, arguing that Amica would be obligated by its policy to pay the arbitration award, regardless of the amount. The final arbitration awards, totalling $50,025, were less than the tortfeasor's total insurance coverage of $75,000; hence, Amica refused to pay the awards.

The source of the parties' disagreement is their differing interpretations of the motor vehicle insurance policy's provisions relating to arbitration and to the requirement that the insured exhaust an underinsured's liability insurance coverage before being entitled to receive any uninsured motorist benefits. "The general rule is that the court will honor the reasonable expectations of the policyholder." *Andrews v. Nationwide Mut. Ins. Co.*, 124 N.H. 148, 153, 467 A.2d 254, 258 (1983) (quoting *Town of Epping v. St. Paul Fire & Marine Ins. Co.*, 122 N.H. 248, 252, 444 A.2d 496, 498 (1982)). Moreover, we will construe an insurance policy in favor of the insured and against the insurer when the policy is ambiguous. *Trombly v. Blue Cross/Blue Shield*, 120 N.H. 764, 771, 433 A.2d 980, 985 (1980). "[P]olicy terms can create ambiguity as to coverage only when the parties may reasonably differ about their interpretation." *City of Manchester v. General Reinsurance Corp.*, 127 N.H. 806, 809, 508 A.2d 1063, 1065 (1986); *Smith v. Liberty Mut. Ins. Co.*, 130 N.H. 117, 536 A.2d 164 (1987). "We determine what is reasonable by considering a policy as a whole and on the basis of a more than casual reading, evaluating any claimed ambiguity by reference to the context in which the relevant language occurs." *Id.* (Citations omitted.)

We begin our analysis with the arbitration provisions because that is where the parties' agreement on the meaning of the policy ends. The parties agree that the insureds may proceed directly against the insurance company, without filing any claims against the tortfeasor, but they disagree on the parties' obligations under such arbitration. Part IV of Amica's "Automobile Combination Policy" contains the two clauses dealing with arbitration. The first

clause appears under the coverage section and provides that the insurance company will

> "pay all sums which the insured or his legal representative shall be legally entitled to recover as damages from the owner or operator of an uninsured motor vehicle because of bodily injury . . . sustained by the insured, caused by accident and arising out of the ownership, maintenance or use of such uninsured motor vehicle; provided, for the purposes of this coverage, determination as to whether the insured or such representative is legally entitled to recover such damages, and if so, the amount thereof, should be made by agreement between the insured or such representative and the company or, if they fail to agree, by arbitration."

The second clause appears under the arbitration section and explains the agreement as follows:

> "If any person making claim hereunder and the company do not agree that such person is legally entitled to recover damages from the owner or operator of an uninsured motor vehicle because of bodily injury to the insured, or do not agree as to the amount of payment which may be owing under this Part, then, upon written demand of either, the matter or matters upon which such person and the company do not agree shall be settled by arbitration .... Such person and the company each agree to consider itself bound and to be bound by any award made by the arbitrators pursuant to this Part."

The arbitration provisions apply only when an automobile accident is caused by one driving an "uninsured motor vehicle." The definition of "uninsured motor vehicle" is amended to include "underinsured motor vehicle" under another part of the policy, labeled as the "New Hampshire Statutory Motor Vehicle Liability Policy Endorsement" (policy endorsement). The policy endorsement was promulgated by the New Hampshire Insurance Department, approved by the New Hampshire Insurance Commissioner pursuant to RSA 264:19, and incorporated into the Morrisons' policy. Before reaching the definition, the relevant paragraph outlines under paragraph 4(a) the insurance company's and the insured's obligations with respect to an underinsured motorist claim as follows:

"The company shall not be obligated to make any payments because of bodily injury to which this insurance applies and which arises out of the ownership, maintenance, or use of an underinsured motor vehicle until after the limits of liability under all bodily injury liability bonds or insurance policies applicable at the time of the accident have been exhausted by payments of judgments or settlements."

Paragraph 4(c) adds "underinsured motor vehicle" to the definition of "uninsured motor vehicle." Paragraph 4(d) defines "underinsured motor vehicle" as follows:

"[A] motor vehicle with respect to the ownership, maintenance, or use of which the sum of the limits of liability under all bodily injury liability bonds and insurance policies applicable at the time of the accident is less than the applicable limits of liability under this insurance."

Reading the policy as a whole, we find that it unambiguously requires the uninsured/underinsured motorist claimant to exhaust the tortfeasor's insurance coverage before the claimant's insurance company is obligated to pay any damages under the uninsured motorist claim. If the insureds are able to determine that a tortfeasor is an uninsured motorist by reading the definitions of uninsured and underinsured motor vehicles, then it is reasonable to expect the insureds to understand the exhaustion limitation on the insurer's obligations with respect to underinsured motorist claims.

The insureds analyze the policy differently. In general, under their interpretation, the coverage and arbitration provisions are controlling. On the one hand, they argue that the arbitration agreement requires the insurance company to make uninsured motorist payments once the tortfeasor is determined to be an uninsured motorist. The exhaustion clause, on the other hand, limits the insurance company's obligation to make any payment until after the insureds have exhausted the tortfeasor's insurance coverage. The insureds argue that, because the two clauses are contradictory, they create an ambiguity, and that the policy should therefore be construed in favor of the insureds by declaring the exhaustion requirement invalid. The insureds rely on RSA 264:15, IV, which provides the uninsured motorist insurance carrier with subrogation rights against the tortfeasor, as statutory support for their interpretation. The insureds assert that the subrogation rights

reveal a legislative intent to encourage such insurance carriers to pay all damages to their insureds, regardless of whether the tortfeasors have any liability insurance. We disagree.

■ The insureds read the policy too narrowly. We will not find ambiguity simply because clauses from different sections appear inconsistent; we will make such a finding only if the clauses create an ambiguity in the context in which they are found. *City of Manchester v. General Reinsurance Corp.*, 127 N.H. at 809, 508 A.2d at 1065. The phrases "to pay all sums" and "agree . . . to be bound by any award" arguably are inconsistent with the exhaustion requirement if the insured chooses to arbitrate without suing the tortfeasor. Nonetheless, in order to understand the meaning of the terms in the coverage and arbitration provisions, it is necessary to consider what an "uninsured motorist" is.

■ The policy endorsement contains the definition which completes the picture of the uninsured motorist coverage. Without this section, the policy would contain no provision describing the underinsured motorist coverage. Therefore, the insureds must read this provision in order to determine not only the terms of underinsured motorist coverage, but that they have such coverage at all. That the section describing underinsured motorist coverage also provides a limitation on that coverage is, by itself, unproblematic. "An insurance company may limit its coverage through 'clear and unambiguous policy language.'" *Cacavas v. Maine Bonding & Casualty Co.*, 128 N.H. 204, 207, 512 A.2d 423, 425 (1986) (quoting *Andrews v. Nationwide Mut. Ins. Co.*, 124 N.H. at 153, 467 A.2d at 258). In this policy, the obligation concerning the additional coverage, *i.e.*, the exhaustion requirement, is placed in the beginning of the paragraph, before the relevant definition.

■■ We hold that the condition on the underinsured motorist coverage that the exhaustion requirement be met is consistent with RSA 264:15, IV and that the policy provisions are not ambiguous. The relevant part of that statute provides the following:

"In the event of payment to any person under the coverage required by this section and subject to the terms and conditions of such coverage, the insurer making payment shall, to the extent thereof, be entitled to the proceeds of any settlement or judgment resulting from the exercise of any rights of recovery of such persons against any person or organization legally responsible for the bodily injury for which such payment is made. . . ."

RSA 264:15, IV. This statute does provide the insurance carrier with subrogation rights, but only "in the event of payment . . . under the coverage . . . and subject to the terms and conditions of such coverage . . . ." RSA 264:15, IV. The insureds fail to recognize that the terms and conditions unambiguously require the insureds to exhaust an underinsured tortfeasor's liability coverage before being entitled to payment under the underinsured motorist coverage. The exhaustion requirement simply makes certain that the insureds need the underinsurance coverage, for the very purpose of such coverage is to indemnify the insured when the tortfeasor's insurance coverage is inadequate. If the insureds were able to recover from their underinsured motorist carrier without exhausting the limits of the tortfeasor's insurance coverage, then the insureds would no longer be an interested party against the tortfeasor. We believe that the legislature did not intend to place the primary responsibility of coverage on the underinsured motorist carrier under RSA 264:15; rather, it intended to provide subrogation rights in the event that the carrier was required, by the terms of the policy, to indemnify its insureds.

 Finally, the insureds argue that Amica forfeited its right to contest liability for payment of uninsured motorist benefits by agreeing to arbitrate. Because we hold that the policy unambiguously states the conditions of the underinsured motorist coverage, this argument is without merit.

*Affirmed.*

All concurred.