Deborah A. SUTCH, Plaintiff
Below, Appellant,

v.

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY, an Illinois
Corporation, Defendant Below, Appellee.

No. 183, 1995.

Supreme Court of Delaware.

Submitted: Nov. 14, 1995.
Decided: Dec. 28, 1995.
Rehearing Denied Jan. 26, 1996.

David H. Erisman of Erisman & Curtin, Wilmington, for appellant.

Francis J. Jones, Jr. (argued), and Eileen K. Anderson of Morris, James, Hitchens & Williams, Wilmington, for appellee.

Before VEASEY, C.J., HOLLAND and HARTNETT, JJ.

HOLLAND, Justice:

The plaintiff-appellant, Deborah Sutch ("Sutch"), was injured in a motor vehicle accident. A Superior Court arbitrator determined that Sutch's injuries had been caused by the negligence of a third-party tortfeasor, Jean Dale ("Dale"). Following the arbitration, a judgment was entered in Superior Court in favor of Sutch, and against the third-party tortfeasor, in the amount of $100,000. The third-party tortfeasor's insurance carrier paid $50,000 to Sutch, which represented the limits of Dale's liability coverage. The defendant-appellee, State Farm Mutual Automobile Insurance Company ("State Farm"), is Sutch's underinsured motor vehicle insurance carrier. State Farm was not a party to the arbitration in the Superior Court.

This appeal presents a question of first impression: whether State Farm is obligated to make underinsurance coverage payments to Sutch, pursuant to the judgment entered in the Superior Court against the tortfeasor, Dale; or whether State Farm can relitigate the underlying issues of liability and damages. Sutch sets forth three arguments in support of her claim that State Farm is obligated to pay her underinsurance benefits. First, Sutch contends that State Farm must pay her $50,000 in underinsurance benefits pursuant to the provisions of her policy and pursuant to 18 Del.C. § 3902. Second, Sutch contends that the collateral estoppel bar in Superior Court Civil Rule 16.1(j) does not entitle State Farm to relitigate the issues of liability and damages, which resulted in the entry of the Superior Court's judgment against the tortfeasor, Dale. Third, Sutch contends that the Superior Court erred in finding that State Farm had shown the requisite prejudice resulting from Sutch's failure to comply with the notice provisions of her

insurance policy, such that relitigation of the issues of liability and damages would be proper.

This Court has concluded that State Farm was obligated to pay underinsurance benefits to Sutch in an amount consistent with the entry of the $100,000 judgment in Superior Court against the tortfeasor, Dale. Therefore, the decision of the Superior Court to the contrary, is reversed.

### Facts

On December 5, 1991, Sutch was injured in a motor vehicle accident involving three vehicles. Sutch filed suit in Superior Court against Dale, alleging that the accident and the injuries Sutch sustained were caused solely by Dale's negligence. The suit filed by Sutch was subject to compulsory arbitration pursuant to Superior Court Civil Rule 16.1. Dale filed a third-party action against Marco Rizzo ("Rizzo"), seeking contribution and/or indemnification. Dale alleged that Rizzo's negligence caused the accident.

The arbitration hearing was held on May 4, 1994. Sutch, Dale and Rizzo had previously entered into a stipulation, which provided that the Superior Court arbitrator could award damages in excess of $100,000[1] and that the decision would not be subject to trial *de novo*. Super.Ct.Civ.R. 16.1(g)(3). The stipulation had also provided for limited discovery to be conducted.

On May 11, 1994, a written arbitrator's order was issued. The arbitrator decided in favor of Sutch and against Dale in the amount of $100,000. The arbitrator also decided in favor of Rizzo and against Dale in the third-party action.

Dale's vehicle was insured by Nationwide Insurance Company ("Nationwide"). That policy provided liability coverage up to $50,000 per person. Sutch's motor vehicle was insured pursuant to a policy issued by State Farm. That policy included underinsured motor vehicle coverage for bodily injury in the amount of $100,000 per person.

---

1. Under Superior Court Civil Rule 16.1, the jurisdictional limit for arbitrations is $100,000. *See* Super.Ct.Civ.R. 16.1(a).

On May 12, 1994, Sutch's attorney advised State Farm of the results of the arbitration. He demanded the payment of $50,000 on behalf of Sutch, pursuant to the underinsured motor vehicle coverage in Sutch's insurance policy. After receiving no response from State Farm, Sutch's attorney reiterated the demand in a letter dated May 31, 1994.

On June 17, 1994, since neither Dale nor Sutch had requested a trial *de novo*, the arbitrator's decision became final. Super.Ct.Civ.R. 16.1(g)(1). Judgment was entered by the Superior Court for Sutch and against Dale in the amount of $100,000. Nationwide paid $50,000 to Sutch, the limits of Dale's liability policy.

Sutch's attorney notified State Farm of the Superior Court's judgment the same day it was entered. He again demanded payment of $50,000 in underinsurance benefits pursuant to Sutch's policy. He received no response.

Sutch filed suit against State Farm in Superior Court on August 1, 1994. Sutch alleged that State Farm breached the provisions of her automobile policy by refusing to pay $50,000 in underinsurance benefits. Sutch contended that she was legally entitled to those benefits as a result of the judgment entered against Dale.

Sutch and State Farm filed cross-motions for summary judgment. Those cross-motions were briefed and argued before the Superior Court. The Superior Court held that the judgment entered against Dale was not binding upon State Farm with respect to either liability or damages, because State Farm was not a party to the arbitration.

### 18 Del.C. § 3902
### Underinsured Motorist Insurance

18 *Del.C.* § 3902 requires underinsured motorist coverage (UIM) to be made available to Delaware motorists.[2] This Court has recognized that the purpose of 18 *Del.C.* § 3902 is to permit a risk-averse person to establish a fund to protect against losses caused by uninsured/underinsured motorists by contracting for supplemental coverage. *Hurst v. Nationwide Mutual Ins. Co.*, Del. Supr., 652 A.2d 10, 12 (1995). In *Hurst*, this Court concluded that the logical operation of Section 3902 is embodied in its express terms:

> First, an offer of uninsured coverage must be extended, not to exceed basic policy limits. 18 *Del.C.* § 3902(b). Second, the damages recoverable for "bodily injury" from the uninsured carrier are quantified in Section 3902(b)(1) as the amount the insured is "legally entitled to recover from the driver of an underinsured motor vehicle." Third, Section 3902(b)(3) provides that the amount of any other "bodily injury" insurance available to the claimant must be exhausted (deducted) before the payment "for bodily injury" by the uninsured carrier pursuant to Section 3902(b)(1). Thereafter, to the extent that the innocently injured claimant has not been fully compensated for all the bodily injury damages that could legally be recovered from the uninsured/underinsured driver, the claimant is entitled to be paid for the uncompensated bodily injuries, up to the full policy limits of the uninsured coverage. 18 *Del.C.* § 3902(b)(1) and (3).

*Hurst v. Nationwide Mutual Ins. Co.*, 652 A.2d at 13–14.

---

**2.** Section 3902(b) provides in pertinent part that: Every insurer shall offer to the insured the option to purchase additional coverage for personal injury or death up to a limit of $100,000 per person and $300,000 per accident or $300,000 single limit, but not to exceed the limits for bodily injury liability set forth in the basic policy. Such additional insurance shall include underinsured bodily injury liability coverage.

(1) Acceptance of such additional coverage shall operate to amend the policy's uninsured coverage to pay for bodily injury dam-

age that the insured or his legal representative are *legally entitled to recover from the driver of an underinsured motor vehicle.*

. . . . .

(3) The insurer shall not be obligated to make any payment under this coverage until after the limits of liability under all bodily injury bonds and insurance policies available to the insured at the time of the accident have been exhausted by payment of settlements *or judgments.*

18 *Del.C.* § 3902(b) (emphasis added).

In the case *sub judice*, Sutch purchased $100,000 worth of underinsurance coverage from State Farm, which State Farm was required to offer to her under 18 *Del.C.* § 3902. Following an arbitration, *judgment* was entered by the Superior Court in favor of Sutch and against Dale in the amount of $100,000. Accordingly, $100,000 constituted the amount that Sutch was "legally entitled to recover from the driver of an underinsured motor vehicle." 18 *Del.C.* § 3902(b)(1).

■ Section 3902(b)(3) provides that "the insurer shall not be obligated to make any payment under this coverage until after the limits of liability under all bodily injury bonds and insurance policies available to the insured at the time of the accident have been exhausted by payment of settlement or judgments." Following the entry of judgment in Superior Court, Nationwide paid $50,000, the limits of Dale's liability coverage, to Sutch. *See* 18 *Del.C.* § 3902(b)(3).[3] Once the Section 3902 requirements have been satisfied, "to the extent that the innocently injured claimant has not been fully compensated for all the bodily injury damages that could legally be recovered from the uninsured/underinsured driver, *the claimant is entitled to be paid for the uncompensated bodily injuries, up to the full policy limits of the uninsured coverage.*" *Hurst v. Nationwide Mutual Ins. Co.*, 652 A.2d at 13, 14 (citing 18 *Del.C.* § 3902(b)(1) and (3) (emphasis supplied)).

According to Sutch, State Farm failed to meet its statutory obligation under 18 *Del.C.* § 3902 because all of the elements thereunder, as analyzed by this Court in *Hurst,* had been satisfied, to wit: she had purchased UIM coverage; the damages Sutch was entitled to recover were quantified at $100,000; and the limits of the tortfeasor's · $50,000

liability coverage were paid. Accordingly, Sutch argues that she is entitled to be paid $50,000 by State Farm for her uncompensated bodily injuries, pursuant to her underinsurance coverage.

*Collateral Estoppel*
*Superior Court Civil Rule 16.1*

State Farm acknowledges that Sutch had UIM coverage of $100,000 per person and that the limit of the tortfeasor's liability coverage was $50,000 per person. Nevertheless, State Farm argues that it is not obligated to pay underinsurance benefits to Sutch. State Farm contends that it is not bound by the findings of the arbitrator with regard to the issues of liability and damages, because it was not a party to the arbitration between Sutch, Dale and Rizzo.

■ In support of its argument, State Farm submits that Superior Court Civil Rule 16.1(j) precludes the arbitrator's decision from binding State Farm. Superior Court Civil Rule 16.1(j) provides that:

[a]wards entered in arbitration proceedings under this Rule shall not have collateral estoppel effect in any other judicial proceedings.

Super.Ct.Civ.R. 16.1(j). This provision precludes an *arbitration award* from having collateral estoppel effect. That provision is operative only with regard to the Prothonotary's entry of "the *arbitrator's award* in an arbitration order docket." Super.Ct.Civ.R. 16.1(g)(2) (emphasis added).

Under the facts of this case, Rule 16.1(j) is inapposite. The parties, Sutch and Dale, made no request for a trial *de novo* following the arbitration. Superior Court Civil Rule 16.1(g)(1) expressly provides that when an

---

**3.** Although the payment by Nationwide satisfied the judgment against Dale, Sutch "continue[d] to be legally entitled to recover against [Dale] for the purposes of recovery against [Sutch's] underinsurance carrier." *See* 18 *Del.C.* § 3902(b)(4). On June 23, 1994, the General Assembly added 18 *Del.C.* § 3902(b)(4) which, in pertinent part, says:

An insured who executes a release of a single tortfeasor owner or operator of an underinsured motor vehicle in exchange for payment of the entire *limits of liability insurance* afforded by the tortfeasor's liability insurer shall

continue to be legally entitled to recover against that tortfeasor for the purposes of recovery against the insured's underinsurance carrier.... 69 *Del.Laws*, c. 253, § 1 (1994). Although it is stated in terms of a release, rather than the satisfaction of a judgment, the legislative intent is clearly to provide plaintiffs with the ability to terminate their claim against a tortfeasor and still recover UIM benefits. The effective date of the amendment was June 23, 1994, prior to the date on which Sutch filed this complaint and satisfied the judgment against Dale.

arbitrator's award is entered as a judgment, "after the time for requesting a trial *de novo* has expired, [t]he *judgment* shall have the same force and effect as a *judgment* of the [Superior Court] in a civil action except it shall not be subject to appeal." Super.Ct.Civ.R. 16(g)(1) (emphasis added).

State Farm was given notice of the arbitrator's award but did not attempt to intervene in the proceedings prior to an entry of judgment against Dale. A *judgment* was then entered in Superior Court pursuant to the provisions of Rule 16.1. *See* Super.Ct.Civ.R. 16.1(g)(1) and (i). The judgment of the Superior Court entered in favor of Sutch and against Dale was entitled to force and effect for all purposes, e.g., collateral estoppel, *res judicata*, or full faith and credit.

### Collateral Estoppel
### Binding Effect of Judgment

■ This Court has not previously addressed the binding effect of a judgment rendered against an uninsured/underinsured motorist *vis-a-vis* a prevailing tort plaintiff's uninsured/underinsured motor vehicle insurance carrier. Several courts from other jurisdictions, however, have had the opportunity to address an issue which is similar to the one presented in this appeal, i.e., whether an insurer is bound by a default judgment taken against a tortfeasor?[4] Those courts have concluded that the UM/UIM statutes do not mandate that an insurer be bound by a default judgment against the tortfeasor in all circumstances. Instead, those courts have held that the insurer will be bound by the default judgment only where the insurer "had full notice and adequate opportunity to intervene and present any defenses and arguments necessary to protect its position." *Champion Ins. Co. v. Denney*, Ala.Supr., 555 So.2d 137, 139 (1989).

In *Champion*, the insured did not comply with the policy's "consent to sue" clause. *Id.* at 137. The insured did, however, provide the carrier with a copy of the complaint filed against the tortfeasor. *Id.* The Alabama Supreme Court concluded that:

The underlying purpose for including the "consent to sue" clause in the policy is to protect the insurance company from unknown or secret actions taken by the insured and the uninsured motorist. Once the insurer is placed on notice of the tort action and given the opportunity to intervene, this purpose is satisfied.

*Id.* at 139. In *Champion*, the court held that the insurer was bound by the default judgment.

In this case, the record reflects that, although State Farm was not a party to the arbitration, it received notice of the arbitrator's decision more than a month before the entry of judgment in Superior Court. Thus, State Farm had the opportunity to intervene in the proceedings between Dale and Sutch to protect its interests, once it was notified of the demand for payment of underinsurance benefits. State Farm elected not to do so.

We find the *ratio decidendi* in *Champion* to be persuasive. We also find that Appleman's treatise on insurance law and practice is instructive on this issue:

A judgment rendered against the uninsured motorist may be conclusive against the uninsured motorist insurer, particularly where it has been joined as a party, or has notice of the proceedings, or a right to defend, *or intervene, which has elected not to do so.*

8C APPLEMAN, INSURANCE LAW AND PRACTICE, § 5089.75, p. 372–73 (1981 and 1994 Supp.) (citations omitted).

In this case, State Farm took no action to intervene. It had sufficient time to do so. This Court holds that the doctrine of collateral estoppel makes the judgment entered by the Superior Court, in favor of Sutch and against Dale, binding upon State Farm. *Columbia Casualty Co. v. Playtex FP, Inc.*, Del.Supr., 584 A.2d 1214 (1991).

### Notice Provision
### State Farm Policy

State Farm's alternative argument is based upon the terms of its policy with Sutch. One portion of the policy provides that a *"person* making [a UIM] claim [ ] shall

4. These states have UM/UIM laws which are sub- stantially similar to Section 3902.

... send us a copy of all suit papers as soon as possible, when the party liable for the accident is sued for these damages."[5] The UIM portion of the policy states that State Farm is not bound by any judgment against any person obtained without its written consent.[6] It is undisputed that Sutch did not comply with these policy provisions. Sutch did not notify State Farm of her lawsuit against Dale until after the arbitrator's decision was rendered.

■ This Court has held that the lack of notification to a carrier does not necessarily relieve the carrier of making payments pursuant to the policy. When the insured fails to comply with a notification provision, the carrier has the burden of showing it was thereby prejudiced. *State Farm Mut. Automobile Ins. Co. v. Johnson*, Del.Supr., 320 A.2d 345 (1974); *Cf. Bryant v. Federal Kemper Ins. Co.*, Del.Super., 542 A.2d 347 (1988); *Home Ins. Co. v. Maldonado*, Del.Supr., 515 A.2d 690 (1986). In *Bryant*, the Superior Court addressed this Court's holding in *Home Ins. Co.* and stated:

> Since an insurer has no obligation to make any payment under its UIM coverage until after the limits of liability insurance policies available to the insured have been exhausted, [18 *Del.C.*] § 3902(b)(3), the insurer's subrogation right will have already been rendered moot before it makes any payment to its insured. A settlement and release of an underinsured motorist, therefore, cannot prejudice the insurer because the limitation on subrogation imposed by the Supreme Court converts this right for all practical purposes into a nullity.

*Bryant v. Federal Kemper Ins. Co.*, 542 A.2d at 350. In this case, the Superior Court found that Sutch did not comply with the notice provisions of the State Farm insurance policy, but held "these failings do not, on their own, release State Farm from liability under the policy."

■ The Superior Court properly held: "to the extent that State Farm is now seeking to deny Sutch's claim based on the lack of notice it must fail based on *Home* and *Bryant*." Nevertheless, the Superior Court concluded that Sutch's failure to notify State Farm of the arbitration until after the arbitrator had reached a decision breached the notice provisions of her State Farm insurance policy. Therefore, the Superior Court held that State Farm was entitled to litigate Sutch's claim for underinsurance benefits.

The latter determination by the Superior Court is inconsistent with this Court's prior holdings. *Home Ins. Co. v. Maldonado*, Del. Supr., 515 A.2d 690 (1986). The record reflects State Farm had notice and the opportunity to intervene to protect its interests before the arbitrator's decision ripened into a Superior Court judgment. Therefore, State Farm failed to demonstrate any prejudice, which would entitle it to litigate the issues of Dale's liability and damages, as a result of Sutch's failure to strictly comply with the notice provisions of her policy.

### Conclusion

The judgment of the Superior Court with regard to State Farm's obligation to pay $50,000 in underinsurance benefits to Sutch is REVERSED. The Superior Court is directed to enter judgment in favor of Sutch and against State Farm in the amount of $50,000, representing the amount of underinsurance benefits payable to Sutch. This matter is remanded to the Superior Court for further proceedings in accordance with this opinion.

---

5. The State Farm policy contains the following provision under the section entitled "Reporting a Claim:"

> The *person* making [a UIM] claim [ ] shall ... send·us a copy of all suit papers as soon as possible, when the party liable for the accident is sued for these damages.

(emphasis in original).

6. The UM/UIM portion of the policy, under the section entitled "Deciding Fault and Amount," provides:

> We are not bound by any judgment against any *person* or organization obtained without our written consent.

(emphasis in original).