[No. E023510. Fourth Dist., Div. Two. Dec. 2, 1999.]

FARMERS INSURANCE EXCHANGE, Plaintiff and Respondent, v. LUZESTELA HURLEY, Defendant and Appellant.

798

## COUNSEL

Richard P. Siref for Defendant and Appellant.

Roberts & Morgan, Bruce Morgan, Aaron Hancock; Hollins, Schechter, Feinstein & Condas and Jack H. Snyder for Plaintiff and Respondent.

## OPINION

**RICHILI, Acting P. J.**—Insurance Code section 11580.2, subdivision (p)(3),[1] provides that underinsured motorist coverage does not apply until the limits of any policy covering the underinsured vehicle "have been exhausted by payment of judgments or settlements . . . ." The question presented in this case is whether a settlement for less than the policy limits satisfies the exhaustion requirement provided the insured agrees to credit the underinsurance carrier with the full policy limits as if they had been paid. We conclude that, under the plain terms of section 11580.2(p)(3), actual payment of the full policy limits is required.

I

### FACTUAL AND PROCEDURAL BACKGROUND

In April 1991, Farmers Insurance Exchange issued a policy of automobile liability insurance to Luzestela Hurley. The policy provided underinsured motorist coverage in the amount of $250,000 per person, but stated Farmers would pay under that coverage "only after the limits of liability under any applicable bodily injury liability bonds or policies have been exhausted by payment of judgments or settlements."

Hurley sustained damages in an automobile accident in May 1991. The other driver, Sunjeon Datta, was driving a car rented from Dollar Rent-a-Car. Hurley sued Datta and Dollar and obtained a default judgment against Datta. However, Datta apparently had no assets or insurance, and Hurley collected no payment from him.

---

[1] Section references are to the Insurance Code unless otherwise indicated. For convenience, we omit the word "subdivision" when referring to statutory subparts of section 11580.2.

Hurley and Dollar stipulated to a judgment in favor of Hurley for $15,000, which amount the parties agree was the limit of Dollar's liability coverage for the vehicle Datta was driving. The stipulation provided, however, that, if Dollar paid $5,000 within two months, this would constitute full satisfaction of the judgment. Dollar paid the $5,000, and Hurley dismissed her action as to Dollar.

Hurley made a claim for underinsured motorist benefits under her policy with Farmers. In October 1997, Farmers brought the present action, seeking a declaration that, because Hurley had failed to exhaust Dollar's liability limits as required by her policy with Farmers and section 11580.2(p)(3), she was not entitled to coverage under that policy.

Farmers moved for summary judgment, and the court granted the motion, ruling that section 11580.2(p)(3) required Hurley to obtain full payment of Dollar's liability limits before she could recover underinsurance benefits. Hurley appealed from the resulting judgment of dismissal.

## II

### DISCUSSION

Unless the parties otherwise agree, an automobile bodily injury liability insurance policy issued in California must include underinsured motorist coverage. (§ 11580.2(a)(1), (b), (p)(7).) This "first-party" coverage provides the insured with a source of compensation for injuries caused by an underinsured motor vehicle. A vehicle is underinsured if it is insured for less than the injured party's underinsured motorist coverage limits. (§ 11580.2(p)(2).)

■ The most an underinsured motorist carrier may be liable for is the amount of its coverage limits, "less the amount paid to the insured by or for any person or organization that may be held legally liable for the injury." (§ 11580.2(p)(4).) A carrier paying an underinsurance claim is entitled to "reimbursement or credit in the amount received by the insured from the owner or operator of the underinsured motor vehicle or the insurer of the owner or operator." (§ 11580.2(p)(5).) Thus, " '. . . a carrier providing underinsured motorist benefits *never* pays the full amount, only the difference between the policy limits and all contributions by all tortfeasors to all insureds.' " (*Hartford Fire Ins. Co.* v. *Macri* (1992) 4 Cal.4th 318, 328 [14 Cal.Rptr.2d 813, 842 P.2d 112]; accord, *Mercury Ins. Co.* v. *Vanwanseele-Walker* (1996) 41 Cal.App.4th 1093, 1102 [49 Cal.Rptr.2d 28].)

■ The provision at issue in this case, section 11580.2(p)(3), provides that underinsurance coverage "does not apply to any bodily injury until the

limits of bodily injury liability policies applicable to all insured motor vehicles causing the injury have been exhausted by payment of judgments or settlements, and proof of the payment is submitted to the insurer providing the underinsured motorist coverage." Since, under section 11580.2(p)(5), the carrier receives credit for any amount paid by the underinsured, the exhaustion requirement effectively guarantees the carrier a credit for at least the amount of the underinsured's policy.

The question is whether section 11580.2(p)(3) and the corresponding exhaustion clause in the Farmers policy prohibit the insured from settling with the underinsured for less than the full policy limits, even if the insured agrees to credit the full policy limits against any benefits paid by his or her underinsurance carrier. Hurley contends that in such a case the carrier is in the same position it would have been in had the policy limits been paid. Therefore, she argues, a discounted settlement should not preclude the insured from seeking underinsurance benefits. Farmers contends the plain language of section 11580.2(p)(3) requires actual payment of the full limits before any underinsurance benefits may be sought.

We are aware of no California authority on point. Hurley cites numerous decisions of other jurisdictions holding that exhaustion clauses of the kind included in the Farmers policy do not require the insured to collect the underinsured's full policy limits, as long as the carrier receives credit for the full limits. (See, e.g., *Boyle* v. *Erie Ins. Co.* (1995) 441 Pa.Super. 103, 109 [656 A.2d 941, 943]; *State Farm Mut. Auto. Ins. Co.* v. *Bencomo* (Colo.Ct.App. 1994) 873 P.2d 47, 49; *Mulholand* v. *State Farm Mut. Auto. Ins. Co.* (1988) 171 Ill.App.3d 600, 617 [122 Ill.Dec. 657, 527 N.E.2d 29, 40]; *Olivas* v. *State Farm Mut. Auto. Ins. Co.* (Tex.App. 1993) 850 S.W.2d 564, 565; *Mann* v. *Farmers Insurance Exch.* (1992) 108 Nev. 648, 650 [836 P.2d 620, 621]; *Matter of Estate of Rucker* (Iowa 1989) 442 N.W.2d 113, 116; *Bogan* v. *Progressive Cas. Ins. Co.* (1988) 36 Ohio St. 3d 22, 28 [521 N.E.2d 447, 453]; *Hamilton* v. *Farmers Ins. Co. of Washington* (1987) 107 Wn.2d 721, 727-728 [733 P.2d 213, 216-217]; *U.S. Fidelity & Guaranty Co.* v. *Gordon* (Fla.Dist.Ct.App. 1978) 359 So.2d 480, 482.)[2] Typically, these decisions reason that a discounted settlement may make economic sense in view of the costs of proceeding to trial. Prohibiting such a settlement contravenes public policy by unnecessarily increasing the burdens of litigation and delaying the insured's receipt of compensation for his or her

---

[2]Hurley also cites *Niemann* v. *Travelers Ins. Co.* (La. 1979) 368 So.2d 1003, but that decision addressed only the validity of a subrogation clause and a clause requiring the carrier's consent to settlement, not an exhaustion clause. (*Id.,* at p. 1008.) *Colonial Penn Ins. Co.* v. *Salti* (1982) 84 A.D.2d 350, 353-355 [446 N.Y.S.2d 77, 79-80], which Hurley also cites, did not hold exhaustion was not required, but merely that it was only required as to the vehicle causing the injury and not as to all vehicles involved in the accident. (84 A.D.2d at pp. 353-355 [446 N.Y.S.2d at pp. 79-80].) That issue is not presented in this case.

injuries. Giving the carrier credit for the full policy limits fully protects its interests without these adverse consequences. (See, e.g., *Mann* v. *Farmers Insurance Exch., supra,* 836 P.2d 620; *Matter of Estate of Rucker, supra,* 442 N.W.2d 113; *Bogan* v. *Progressive Cas. Ins. Co., supra,* 521 N.E.2d 447.)

The view expressed in these cases is not unanimous, and other jurisdictions have held exhaustion clauses to be enforceable notwithstanding their potential undesirable consequences. (See, e.g., *Robinette by McMahon* v. *American Liberty Ins. Co.* (S.D.Miss. 1989) 720 F.Supp. 577, 580; *Amica Mut. Ins. Co.* v. *Morrison* (1987) 130 N.H. 250, 254 [536 A.2d 199, 201]; *Gaught* v. *Evans* (Ala. 1978) 361 So.2d 1027, 1029.) However, the view disfavoring strict enforcement does appear to be the prevailing one. Nonetheless, we find the decisions adopting that view to be unpersuasive in this case.

Unlike the present case, the decisions declining to require exhaustion on public policy grounds did not involve exhaustion provisions contained in statutes such as section 11580.2(p)(3), but only provisions contained in the insurance policies themselves. In several of the decisions, in fact, the courts expressly noted that the applicable statutes *did not* require the insured to obtain actual payment of the underinsured's full policy limits. (See, e.g., *State Farm Mut. Auto. Ins. Co.* v. *Bencomo, supra,* 873 P.2d 47, 50; *Bogan* v. *Progressive Cas. Ins. Co., supra,* 36 Ohio St.3d 22, 27 [521 N.E.2d 447, 452]; *U.S. Fidelity & Guaranty Co.* v. *Gordon, supra,* 359 So.2d 480, 481; see also *Olivas* v. *State Farm Mut. Auto. Ins. Co., supra,* 850 S.W.2d 564, 566 [statute only required that underinsurance benefits be *reduced* by amount "recovered or recoverable" from underinsured's carrier].) The remaining decisions simply found the exhaustion provisions of the policies themselves to be unenforceable, without addressing whether the provisions would have been enforceable had there been a statute requiring exhaustion, as in the present case.

While a contractual provision may be declared void if it is contrary to public policy (Civ. Code, § 1667), a statute may not be invalidated except on constitutional grounds. (*Smith* v. *Fair Employment & Housing Com.* (1996) 12 Cal.4th 1143, 1160 [51 Cal.Rptr.2d 700, 913 P.2d 909].) In the context of the underinsurance provisions, it has repeatedly been recognized that a court " 'may not rewrite the statute to bring about a contrary result even if that result could be argued to be socially desirable.' " (*Fagundes* v. *American Internat. Adjustment Co.* (1992) 2 Cal.App.4th 1310, 1316 [3 Cal.Rptr.2d 763].) As Division One of this district recently observed: "Although recognizing the underinsurance statutory provisions are 'not a model of clarity'

[citation], our courts have uniformly resisted requests that they rewrite the statutory language to achieve a perceived legislative or public policy goal. [Citations.]" (*Mercury Ins. Co. v. Vanwanseele-Walker, supra,* 41 Cal.App.4th 1093, 1103.)

Because a statute necessarily reflects public policy "[w]hen a clause in an insurance policy is authorized by statute, it is deemed consistent with public policy as established by the Legislature." (*Prudential-LMI Com. Insurance v. Superior Court* (1990) 51 Cal.3d 674, 684 [274 Cal.Rptr. 387, 798 P.2d 1230]; accord, *State Farm Mut. Auto. Ins. Co. v. Messinger* (1991) 232 Cal.App.3d 508, 522 [283 Cal.Rptr. 493].) The exhaustion clause in Farmers' policy merely reiterates the provisions of section 11580.2(p)(3). Hurley makes no contention that section 11580.2(p)(3) is unconstitutional. Consequently, the exhaustion clause must be deemed to reflect public policy, and we must affirm the judgment unless the term "exhausted," as used in the statute, reasonably may be interpreted to permit an insured to settle with the underinsured's carrier for less than the full policy limits.

■ "[I]n determining the meaning of a statute, we look to its words and give them their usual and ordinary meaning. [Citations.] '[I]f statutory language is "clear and unambiguous there is no need for construction, and courts should not indulge in it." [Citation.]' [Citation.]" (*Birbrower, Montalbano, Condon & Frank v. Superior Court* (1998) 17 Cal.4th 119, 131-132 [70 Cal.Rptr.2d 304, 949 P.2d 1].) ■ Section 11580.2(p)(3) plainly declares that underinsurance coverage is not available until the limits of the underinsured's policy "have been exhausted by payment of judgments or settlements." We cannot interpret this language in any way other than to mean that the full limits of the policy must actually be paid. Courts of other jurisdictions have held that virtually identical language in a statute or insurance policy is not ambiguous and may only reasonably be interpreted to require payment of full policy limits. (See, e.g., *Continental Ins. Co. v. Cebe-Habersky* (1990) 214 Conn. 209, 212-213 [571 A.2d 104, 105-106]; *Robinette by McMahon v. American Liberty Ins. Co., supra,* 720 F.Supp. 577, 580; see also *Silvers v. Horace Mann Ins. Co.* (1988) 90 N.C.App. 1, 8 [367 S.E.2d 372, 376]; *Augustine v. Simonson* (1997) 283 Mont. 259, 264 [940 P.2d 116, 119] [exhaustion clause unenforceable, but not ambiguous].) As one court succinctly put it, "There is nothing in the common meaning of 'exhaust' to suggest that partial use of what is available amounts to its exhaustion." (*Continental Ins. Co. v. Cebe-Habersky, supra,* at p. 212 [571 A.2d at p. 106].)

An analogous situation exists in the context of excess insurance policies, which require that primary insurance be exhausted before excess coverage

may be invoked. California courts have consistently interpreted such provisions to mean that there is no excess coverage where the insured settles for less than the full limits of the primary policy. (See, e.g., *Community Redevelopment Agency v. Aetna Casualty & Surety Co.* (1996) 50 Cal.App.4th 329, 340 [57 Cal.Rptr.2d 755]; *Olympic Ins. Co. v. Employers Surplus Lines Ins. Co.* (1981) 126 Cal.App.3d 593, 600 [178 Cal.Rptr. 908].) Moreover, it is the amount actually paid from the primary coverage, not the nominal amount of the settlement, that determines whether the primary coverage has been exhausted.

*City of Oxnard v. Twin City Fire Ins. Co.* (1995) 37 Cal.App.4th 1072 [44 Cal.Rptr.2d 177] is illustrative. There, the city maintained a self-insured liability plan under which it had a $100,000 self-insured retention. It purchased excess insurance policies which provided that coverage was only available for liability in excess of the retained limit. The city was sued and settled the action for a total of $306,000. However, other insurers reimbursed the city for all but $99,857. The court held the excess insurers had no liability, because the retained limit had not been exhausted. It was the amount actually paid by the city, not the amount of the settlement, that was determinative. (*Id.*, at p. 1078.)

Here, although Hurley putatively obtained a judgment for the full $15,000 limits of Dollar's policy, it is undisputed that only $5,000 was actually paid on that policy. We cannot deem the policy limits to have been "exhausted by payment of judgments or settlements" without stretching the language far beyond its "usual and ordinary meaning." (*Birbrower, Montalbano, Condon & Frank v. Superior Court, supra*, 17 Cal.4th 119, 131.) Nor can we accept Hurley's invitation to construe the exhaustion requirement to require only that a full credit for the policy limits be afforded to the carrier, whether or not the full limits actually are paid. Section 11580.2(p)(3) contains no language whatever from which it may be inferred that a credit is an alternative to actual payment. ▮ "The function of the court in construing a statute 'is simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted, or to omit what has been inserted . . . .' " (*Ventura County Deputy Sheriffs' Assn. v. Board of Retirement* (1997) 16 Cal.4th 483, 492 [66 Cal.Rptr.2d 304, 940 P.2d 891].)

▮ Hurley cites only one decision in which a court has interpreted statutory language like that in section 11580.2(p)(3) so as not to require full payment of the underinsured's policy limits.[3] *Longworth v. Van Houten* (1988) 223 N.J. Super. 174 [538 A.2d 414] (cited hereafter as *Longworth*)

---

[3]Hurley cites other decisions which she contends construe statutory exhaustion provisions so as not to require actual payment of full policy limits. In *Sutch v. State Farm Mut. Auto. Ins.*

involved a statute which stated " '[a] motor vehicle shall not be considered an underinsured motor vehicle under this section unless the limits of all bodily injury liability insurance or bonds applicable at the time of the accident have been exhausted by payment of settlements or judgments.' " Because the full policy limits had been offered in *Longworth,* the court recognized that the effect of the exhaustion provision was not directly before it. The court nonetheless elected to address the matter because it was closely related to the subrogation and consent-to-settle clauses that were at issue in *Longworth.* (*Id.,* at p. 192 [538 A.2d at p. 423].) It noted that the exhaustion language was "included in definitional terms rather than in the circumscription of the insured's substantive right against his [underinsured motorist] carrier." Therefore, it concluded the statute was intended only to require deduction of the full policy limits from the underinsured motorist benefits, whether or not the limits actually were paid. (*Ibid.*)

Even if its interpretation of the exhaustion provision can properly be characterized as a holding rather than dictum, *Longworth* is readily distinguishable. The California Supreme Court has made clear that the exhaustion requirement set forth in section 11580.2(p)(3) is *not* merely a "definitional" provision, but is "a *precondition to coverage*" for underinsurance benefits. (*Quintano* v. *Mercury Casualty Co.* (1995) 11 Cal.4th 1049, 1056 [48 Cal.Rptr.2d 1, 906 P.2d 1057].) Although the court in *Quintano* did not address whether section 11580.2(p)(3) requires actual payment of the underinsured's policy limits,[4] its conclusion that exhaustion is a substantive precondition to coverage is plainly inconsistent with the reasoning of the court in *Longworth* in stating that actual payment is not required.

More relevant to our analysis is the decision of the New York Court of Appeals in *Federal Ins. Co.* v. *Watnick* (1992) 80 N.Y.2d 539 [592 N.Y.S.2d

*Co.* (Del. 1995) 672 A.2d 17 and *Hurst* v. *Nationwide Mut. Ins. Co.* (Del. 1995) 652 A.2d 10, however, the full policy limits were paid (*Sutch, supra,* at p. 19; *Hurst, supra,* at p. 12), so that any suggestion that full payment might not be required was dictum. In *Brown* v. *Comegys* (Del. Super. Ct. 1985) 500 A.2d 611, the court did not discuss the exhaustion provision of the Delaware statute (Del. Code Ann. tit. 18, § 3902(b)(3)), and it is not clear whether the provision was in effect at the time of that decision. In *Cobb* v. *Benjamin* (1997) 325 S.C. 573 [482 S.E.2d 589], the statute did not actually require exhaustion, providing only that if the underinsured's carrier paid its policy limits the underinsurance carrier could assume the defense of the action. The court declined to infer from this provision a requirement that the policy limits be paid as a precondition to underinsurance coverage. (*Id.* at pp. 582, 589 [482 S.E.2d at pp. 594, 597].)

[4]The issue in *Quintano* was whether section 11580.2(i), which requires that an insured in some cases make a claim under his or her uninsured motorist policy within one year of being injured, should apply to underinsured motorist coverage. The court held that, because it may take the insured more than a year to fulfill the preconditions for underinsurance coverage by reaching a settlement or judgment exhausting the underinsured's policy limits, the one-year limitation should not apply. (11 Cal.4th at p. 1057.)

624, 607 N.E.2d 771]. There, the court considered a statute which provided: " 'As a *condition precedent* to the obligation of the insurer to pay under the supplementary uninsured motorists insurance coverage, the limits of liability of all bodily injury liability bonds or insurance policies applicable at the time of the accident shall be *exhausted by payment of judgments or settlements.*' " The court held that ". . . the statutory scheme requires primary insurers to pay every last dollar, and requires plaintiffs to accept no less, prior to the initiation of an underinsurance claim." It rejected the insureds' suggestion that a setoff for the full policy limits would make the carrier whole and eliminate the need for actual payment. (*Id.,* at p. 546 [607 N.E.2d at p. 774].)

Section 11580.2(p)(3), of course, does not expressly state that the underinsured's full policy limits must be paid as a condition precedent to coverage, as did the statute in *Federal Ins. Co.* v. *Watnick, supra,* 80 N.Y.2d 539 [607 N.E.2d. 771 However, as noted *ante,* the Supreme Court in *Quintano* v. *Mercury Casualty Co., supra,* 11 Cal.4th 1049 concluded that exhaustion of the underinsured's policy is, in fact, a precondition to underinsurance coverage. Accordingly, *Watnick*'s conclusion that exhaustion requires full payment of the policy limits is equally applicable in interpreting section 11580.2(p)(3).

We conclude the plain language of section 11580.2(p)(3) requires actual payment of the underinsured's policy limits before underinsurance coverage can be invoked. A court may decline to give effect to the plain meaning of words in a statute only if " ' "doing so would result in absurd consequences which the Legislature did not intend." ' " (*Calatayud* v. *State of California* (1998) 18 Cal.4th 1057, 1065 [77 Cal.Rptr.2d 202, 959 P.2d 360].) We cannot conclude that giving effect to the plain meaning of section 11580.2(p)(3) would result in such consequences.

It may be true, as Hurley argues, that in some cases strict enforcement of the exhaustion requirement will produce undesirable results. The insured may be compelled to pursue expensive litigation for only a minimal benefit, as where the underinsured's carrier offers close to its limits but refuses to pay the entire amount. In other cases, however, equally undesirable results may occur from not requiring strict compliance. The insured in a questionable case might be willing to accept a token settlement from the underinsured's carrier and credit the full limits against his or her underinsurance benefits, simply out of a perception that the underinsurance carrier will present an easier avenue of recovery.

Additionally, insurance rates are supposed to reflect the liability risks presented by the parties insured. The Legislature may have considered it

contrary to public policy to permit an underinsured's carrier to pay less than its limits simply because the injured party is willing to forego recovery against that carrier in order to proceed directly against his or her own carrier. Requiring full exhaustion prevents such a windfall to the underinsured and his or her carrier.

Other considerations also may militate in favor of strict enforcement. If the underinsured's carrier knows the insured cannot settle for less than the policy limits, it may be more apt to pay promptly in cases where liability is relatively clear, rather than prolonging the matter in the hope of obtaining a discounted settlement. Additionally, requiring actual exhaustion "makes certain that the insureds need the underinsurance coverage, for the very purpose of such coverage is to indemnify the insured when the tortfeasor's insurance coverage is inadequate." (*Amica Mut. Ins. Co.* v. *Morrison, supra*, 130 N.H. 250, 254 [536 A.2d 199, 202].) A settlement which is significantly lower than the policy limits may reflect not a prudent decision to minimize litigation costs, but a realization that the probable recovery if the case proceeded to trial would not, in fact, exceed the policy limits.

Indeed, for that very reason, even courts in at least one jurisdiction which has held that payment of the underinsured's full limits is not required have nonetheless denied underinsurance benefits when the amount paid is so far below the limits that the shortfall cannot be considered a saving in litigation costs. (*Motorists Mut. Ins. Cos.* v. *Grischkan* (1993) 86 Ohio App.3d 148, 153 [620 N.E.2d 190]; *Stahl* v. *State Farm Mut. Auto. Ins. Co.* (1992) 82 Ohio App.3d 599, 603-604 [612 N.E.2d 1260, 1262-1263]; contra, *Combs* v. *Nationwide Mut. Ins. Co.* (1997) 119 Ohio App.3d 137, 140 [694 N.E.2d 555, 556].) In such a case, it has been stated, the tortfeasor is adequately insured, and underinsurance coverage is not appropriate. (*Biondic* v. *Nationwide Mut. Ins. Co.* (1988) 51 Ohio App.3d 179, 181 [555 N.E.2d 976, 979].) Determining what is or is not a reasonable savings in litigation costs, however, requires the court to make subjective judgments on a record that may provide little in the way of factual context if the matter is settled in the early stages of the litigation. The Legislature reasonably could have concluded the preferable course is simply to require payment of the full policy limits in every case.

In view of these considerations, we are unable to conclude the Legislature could not have intended that the language of section 11580.2(p)(3) be applied literally to require actual payment of the underinsured's full policy limits. We therefore conclude the lower court properly granted Farmers' motion for summary judgment.

## III

### DISPOSITION

The judgment is affirmed. Costs to respondent.

Ward J., and Gaut J., concurred.

**GAUT, J.,** Concurring.—We reluctantly concur with the opinion. We believe that the correct result in this case is to make the insurer of the injured party responsible for the difference between the policy limits of the underinsured vehicle and the injured party's own policy, regardless of whether the insurer of the underinsured vehicle pays its full policy limits. The obvious purpose of Insurance Code section 11580.2, subdivision (p)(3) is to prevent the injured party from receiving a windfall in the form of a payment from both the underinsured party's carrier and a payment in full by his own insurance carrier.

Allowing the injured party's carrier a credit for the underinsured party's policy limit achieves this purpose. So long as the carrier receives that credit it is in the same position whether or not its insured is paid the full amount of the offending party's policy. Further, an interpretation allowing the injured party to accept partial payment from the underinsured party's insurance carrier serves a number of beneficial objectives. It encourages settlement, reduces litigation, saves court time, and reduces the costs to both parties. Perhaps most important, it prevents the injured party from incurring expenses in time and money in an effort to wring out the last dime from the underinsured party's insurance company.

Unfortunately, we see no way around the statute as written. Subdivision (p)(3) of section 11580.2 of the Insurance Code is very specific. It provides that the underinsured coverage "does not apply to any bodily injury until the limits of bodily injury liability policies applicable to all insured motor vehicles causing the injury have been *exhausted by payment of judgments or settlements . . . .*" (Italics added.) We have tried to interpret that section to allow the injured party to request the difference between the amount of the underinsured vehicle's policy and the face of the insured's policy. Our inclination is, however, trumped by the section which explicitly requires exhaustion by payment of judgment or settlement coupled with *proof of the payment* being submitted to the insurer providing the underinsured motorist coverage.

We therefore bow to the inevitable and join in the majority opinion. At the same time, we encourage the Legislature to consider the wisdom of modifying the section to achieve the apparent purpose of the statute by allowing

partial payment by the underinsured motorist's carrier so long as full credit is given to the injured party's carrier for the policy limits of the underinsured motorist.

Ward, J., concurred.

A petition for a rehearing was denied December 17, 1999, and the opinion was modified to read as printed above. Appellant's petition for review by the Supreme Court was denied February 16, 2000.