OPINION
Defendant-appellant, The Personal Service Insurance Company ("Personal Service"), appeals from the declaratory judgment finding plaintiffs-appellees, Isler and Maria Ferrando ("Ferrandos"), were covered under the underinsured motorist provision of a policy issued by Personal Service.
On February 28, 1994, Isler Ferrando was driving on State Route 20 in the City of Ashtabula. Ferrando was employed by the City of Ashtabula and drove a vehicle owned by his employer. Ferrando observed some debris fall off a dump truck onto the roadway. Ferrando stopped his car, engaged the hazard lights, and exited the vehicle. Ferrando was bent over, picking up the debris, when the dump truck backed up in the lane and struck Ferrando in the head. Ferrando sustained bodily injuries as a result of the accident. On May 20, 1997, the Ferrandos entered into a settlement agreement with the tortfeasor, Douglas Marvin, for $12,500, exhausting Marvin's policy limits. Auto-Owners (Mutual) Insurance Company ("Auto-Owners"), the Ferrandos' insurance company, gave the Ferrandos permission to settle with Marvin.
The Ferrandos pursued an underinsured motorist claim against Auto-Owners. In the process, it was discovered that the City of Ashtabula carried underinsured motorist coverage through Personal Service for the vehicle involved in the accident. Personal Service received notice of the accident and lawsuit when Auto-Owners sought to bring it in as a party in the lawsuit filed by the Ferrandos. The original suit was dismissed without prejudice. It is undisputed Personal Service did not know about the settlement with Marvin or consent to the tortfeasor's release.
On January 12, 1999, Isler and Maria Ferrando refiled their complaint for declaratory judgment against Auto-Owners and Personal Service. The Ferrandos asked the trial court to declare that the underinsured motorist coverage for both policies applied to the February 28, 1994 accident. On February 2, 1999, Personal Service answered, raising as a defense that the release of the tortfeasor without its knowledge voided any underinsured motorist coverage the plaintiffs may have been entitled to receive. On February 26, 1999, Auto-Owners answered and filed a counterclaim and cross-claim. Auto-Owners claimed its policy did not apply because Ferrando was not in the vehicle at the time he was struck by Marvin's dump truck. Auto-Owners contended Personal Service's policy provided primary coverage. Auto-Owners also stated it was entitled to set-off or contribution from Personal Service.
On January 21, 2000, Personal Service filed a motion for summary judgment arguing the Ferrandos' act of settling with Marvin constituted a material breach of the insurance contract, precluding coverage. Personal Service also argued it did not receive prompt notice of the accident as required by the policy. On February 11, 2000, Auto-Owners also filed a summary judgment motion.
On May 5, 2000, the Ferrandos responded to Personal Service's summary judgment motion by stating they did not learn that Personal Service's insurance contract with the City of Ashtabula included underinsured motorist coverage until after entering into the release with Marvin. The Ferrandos contended city vehicles normally do not carry underinsured motorist coverage and that the notice to Personal Service was timely under the facts and circumstances of this case. In their motion, the Ferrandos argued Personal Service was not prejudiced by the release because Auto-Owners performed an asset check of Marvin and determined he was uncollectable. The only evidence offered in support of this contention is a letter from Auto-Owners attorney stating his client agreed to waive its right to subrogation against Marvin. The Ferrandos asked the trial court to declare they were covered, insured persons under both the Personal Service policy and the Auto-Owners policy.
On June 9, 2000, the trial court found Personal Service received reasonable notice of the Ferrandos' claim once it was discovered that the City of Ashtabula maintained underinsured motorist coverage for its employees. The trial court stated it was obvious that Auto-Owners released Marvin from any further liability because of his insufficient assets. The trial court found Personal Service was not prejudiced by any late notice because Marvin had insufficient assets for Auto-Owners to pursue. Therefore, Personal Service would be unable to recover anything from Marvin. The trial court found the Ferrandos were covered by Personal Service under the underinsured motorist coverage provided by the City of Ashtabula. The trial court denied Personal Service's motion for summary judgment and granted the Ferrandos' motion for summary judgment by declaring they were covered under the policy issued by Personal Service. Personal Service has appealed from this ruling.
Personal Service assigns the following error for review:
 "The trial court erred to the prejudice of defendant-appellant The Personal Service Insurance Company in overruling its motion for summary judgment and in granting the plaintiffs-appellees' motion for summary judgment against defendant-appellant The Personal Service Insurance Company."
 In its sole assignment of error, Personal Service contends the Ferrandos committed a material breach of the insurance contract, resulting in the loss of their right to recover under the policy. Personal Service maintains that the policy in issue contains an exclusion for any claim settled without its consent. Personal Service argues it was not involved in the decision to release Marvin and did not consent to the Ferrandos accepting his full policy limits. Personal Service asserts it is discharged from any obligation to provide coverage.
This case was decided by summary judgment. Summary judgment is a procedural device designed to terminate litigation and avoid a formal trial where there is nothing to try. Norris v. Ohio Std. Oil Co. (1982), 70 Ohio St.2d 1. Doubts must be resolved in favor of the nonmoving party. Davis v. Loopco Industries, Inc. (1993),66 Ohio St.3d 64, 66. Pursuant to Civ.R. 56(C), summary judgment is proper when (1) there is no genuine issue of material fact remaining to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come but to one conclusion and that conclusion is adverse to the nonmoving party. The nonmoving party is entitled to have the evidence construed most strongly in his or her favor. Zivich v. Mentor Soccer Club, Inc. (1998), 82 Ohio St.3d 367.
A party moving for summary judgment bears the initial burden of informing the trial court of the basis of the motion and pointing to parts of the record that show the absence of a genuine issue of material fact. Dresher v. Burt (1996), 75 Ohio St.3d 280, 293-294. The moving party has the burden even with regard to issues for which the plaintiffs would have the burden of proof should the case go to trial. Vahila v.Hall (1997), 77 Ohio St.3d 421. Once a party has satisfied this incipient burden, a reciprocal burden arises upon the nonmoving party to respond and set forth specific facts showing that there is a genuine issue of material fact to be resolved at trial. Dresher, supra, at 293. A "material" fact is one that would affect the outcome of the suit under the applicable substantive law. Russell v. Interim Personnel, Inc. (1999), 135 Ohio App.3d 301.
When reviewing summary judgment cases, appellate courts apply a denovo standard of review. Cole v. American Indus. and Resources Corp. (1998), 128 Ohio App.3d 546, 552. A reviewing court will apply the same standard a trial court is required to apply, which is to determine whether any genuine issues of material fact exist and whether the moving party was entitled to judgment as a matter of law. Parenti v. GoodyearTire Rubber Co. (1990), 66 Ohio App.3d 826, 829.
Personal Service argues that a three and one-half year delay in the acceptance of the settlement and release of the tortfeasor by the Ferrandos in 1997, without notice to Personal Service during that period, constituted a material breach of the insurance contract, resulting in the loss of the insureds' right to recover. The insurance policy at issue contained an exclusion for any claim settled without the consent of Personal Service.
Personal Service does not dispute that the Ferrandos were covered persons under the policy of his employer. In Scott-Pontzer v. LibertyMut. Fire Ins. Co. (1999), 85 Ohio St.3d 660, the Supreme Court of Ohio found that the term "insured" was ambiguous and held that the policy in question could be interpreted to cover a corporation's employees as well as the corporation itself. The court noted that a corporation can act only through its employees as it is not capable of occupying a vehicle itself. The policy in issue in the instant case contains the same definition. Therefore, the reasoning of Scott-Pontzer will be applied to the automobile insurance policy held by the City of Ashtabula.
The purpose of a subrogation clause is to prevent an insured from extinguishing any right of subrogation an insurer would have against a tortfeasor. Bacon v. West American Ins. Co. (1996), 115 Ohio App.3d 433. A subrogation clause is a valid and enforceable precondition for the provision of underinsured motorist coverage. Bogan v. Progressive Cas.Ins. Co. (1988), 36 Ohio St.3d 22, paragraph four of the syllabus. A full and final release by the insured, without the consent of the insurer, destroys the insurer's subrogation rights. Id. at 26. Before an insured notifies his or her insurance company of a settlement offer, the insured is the only one who can protect or destroy an underinsurer's subrogation rights. Therefore, an insured who destroys his or her insurer's subrogation rights without the insurer's knowledge does so at his or her peril. McDonald v. Republic-Franklin Ins. Co. (1989),45 Ohio St.3d 27.
The failure to give any notice or to seek the consent of the insurer to a proposed settlement when an insurance contract has a subrogation clause is a material breach of the contract. The insurer is not required to pay the claim as a result of the failure to give notice of the settlement offer. Paskel v. Allstate Ins. (Apr. 12, 1996), Trumbull App. No. 95-T-5270, unreported, 1996 Ohio App. LEXIS 1459.
The right of subrogation is a full and present right, independent of whether the use of such right will provide the insurer with a collection from the tortfeasor. Nickschinski v. Sentry Ins. Co. (1993),88 Ohio App.3d 185. The probable success of the use of the subrogation rights does not affect whether an insurance provider can require its consent as a precondition to providing underinsurance benefits. Gibsonv. State Farm Mut. Auto. Ins. Co. (1997), 123 Ohio App.3d 216. The insurer may require, as a precondition to underinsurance coverage, that the injured party not compromise that right with the tortfeasor in such a way as to destroy the insurer's subrogation right. The insurer does not have to show that the subrogation rights will result in reimbursement.Bogan, supra. Even if the subrogation rights are worthless because the tortfeasor is uncollectable, the insured may not destroy the subrogation rights in contravention of a contract exclusion that the insurer be notified before a settlement is entered into by the insured.Nickschinski, supra. Whether the insurer was prejudiced by the settlement and release is not part of the inquiry; rather, the focus is on whether a material precondition to coverage was breached. Bacon, supra.
The insurance contract issued by Personal Service required the insured to notify Personal Service before any settlement was agreed upon and entered into by the insured. This was a precondition to coverage. The Ferrandos entered into the settlement agreement and release before Personal Service was aware of the claim. The settlement and release constituted a material breach of the contract, precluding coverage.
The Ferrandos counter by arguing they were unaware the City of Ashtabula's policy with Personal Service included underinsured motorist coverage. They contend such coverage is unusual because municipalities normally do not provide such coverage for their municipal vehicles. The Ferrandos argue they promptly notified Personal Service of their claim after discovering the coverage existed. The Ferrandos maintain Personal Service was not prejudiced by the delay because Marvin has no assets.
A clause in an insurance contract requiring immediate notice of an occurrence is interpreted to mean that the notice must take place within a reasonable time under the surrounding facts and circumstances of the case. Ormet Primary Aluminum Corp. v. Employers Ins. of Wausau (2000),88 Ohio St.3d 292. Unreasonable delay in giving notice to an insurer may be presumed to be prejudicial absent evidence to the contrary. Ruby v.Midwestern Indemn. Co. (1988), 40 Ohio St.3d 159. Once a delay is determined to be unreasonable, the burden falls upon the insured to present some evidence to rebut the presumption of prejudice. Helman v.Hartford Fire Ins. Co. (1995), 105 Ohio App.3d 617; Ohio Cas. Ins. Co.v. Joseph Sylvester Constr. Co. (Sept. 30, 1991), Trumbull App. No. 90-T-4439, unreported, 1991 Ohio App. LEXIS 4629.
In the within case, the accident occurred on February 28, 1994. The Ferrandos executed the release with Marvin on May 20, 1997. Personal Service was unaware of the accident or any potential claim until August 18, 1997, when Auto-Owners joined Personal Service as a party to the action, which was dismissed. In Fillhart v. Western Reserve Mut. Ins.Co. (1996), 115 Ohio App.3d 200, the court held that a five-year delay in notification was prejudicial. In Joseph Sylvester Constr. Co.,supra, this court stated the insurer was prejudiced by an almost three-year delay. In the instant case, there was a three and one-half year delay before Personal Service learned of the possible claim. Under the circumstances of this case, this is prejudicial as a matter of law. The Ferrandos had already settled their claim against the tortfeasor before Personal Service received any notice at all regarding the accident.
Further, the Ferrandos were unaware of the potential coverage due to their failure to investigate or inquire as to the scope of the City's insurance coverage. They assumed the City of Ashtabula did not have uninsured/underinsured motorist coverage for its municipal vehicles. This assumption should not prejudice the insurer.
The burden then was placed upon the Ferrandos to rebut the presumption of prejudice. In order to demonstrate Personal Service did not suffer prejudice, the Ferrandos argued, in their brief in response to Personal Service's motion for summary judgment, that Marvin, the tortfeasor, had no assets with which to satisfy their claim. They rely on Auto-Owners' performance of an asset search of Marvin and the resulting determination that Marvin was judgment proof. Therefore, the Ferrandos contend Personal Service was not prejudiced because it could not have recovered any monies from Marvin by exercising its right to subrogation. The only evidence supporting this contention is a copy of the letter sent to plaintiffs' attorney by Auto-Owners in which it agreed to waive its right of subrogation if Marvin offered the limits of his liability insurance policy in settlement of the matter. There is no evidence in the record of an asset check or the financial means of the tortfeasor. This is not sufficient evidence Marvin was judgment proof as the Ferrandos claim. Because the Ferrandos did not meet their burden by rebutting the presumption of prejudice, the late notice was unreasonable and prejudicial.
Unfortunately for the Ferrandos, they materially breached the insurance contract by settling and releasing their claims against Marvin. Further, appellees did not rebut the presumption of prejudice after the delay in notifying Personal Service about the possible claim.
The Ferrandos dispute the viability of Brogan, supra, contending the Supreme Court of Ohio partly overruled the case in McDonald, supra.McDonald expressly overruled paragraph five of Brogan, which provided that an insurer was not required to give its consent to a proposed settlement if the settlement would destroy the insurer's subrogation rights. In McDonald, the court determined this holding was too broad. Once an insured notifies his insurance carrier of a tentative settlement agreement prior to release, the insurer has a reasonable opportunity to protect its subrogation rights by paying the underinsured motorist benefits before release. The release will not preclude recovery in these instances. Id., at paragraph two of the syllabus. However, this isnot the factual setting in the present case. The modification of Brogan
does not affect the resolution of the instant case because the Ferrandos did not notify appellant of the proposed settlement prior to their executing the release. Paragraph four of Brogan remains controlling law with respect to this case.
The trial court erred by declaring the Ferrandos were covered under the underinsured motorist provision of the policy issued by Personal Service. The trial court erred by granting the Ferrandos' motion for summary judgment. For the reasons
stated above, this case is reversed and judgment is entered for appellant, The Personal Service Insurance Co.
________________________________________ JUDGE DIANE V. GRENDELL
FORD, P.J., concurs with Concurring Opinion, CHRISTLEY, J., concurs.